BANK OF COMMERCE, Respondent, v. PAINE, WEBBER, JACKSON & CURTIS and another, Appellants: SWIDLER, Third-Party Defendant.

*No. 295. Argued April 9, 1968.—Decided May 7, 1968.*
(Also reported in 158 N. W. 2d 350.)

32

34

For the appellants there were briefs by *Foley, Sammond & Lardner,* attorneys, and *Marvin E. Klitsner, John R. Collins,* and *James O. Huber* of counsel, all of Milwaukee, and oral argument by *Mr. Collins* and *Mr. Huber.*

For the respondent there was a brief by *Petrie, Stocking, Meixner & Zeisig,* attorneys, and *Edmond F. Zeisig* of counsel, all of Milwaukee, and oral argument by *Edmond F. Zeisig.*

BEILFUSS, J. The principal issue, as presented by the parties, is whether the maker of a negotiable instrument, a bank check, is foreclosed or estopped from asserting a defense against a holder not in due course when the maker has, prior thereto, obtained a judgment against the payee.

The appellant sets forth other issues: (1) That the trial court assumed the plaintiff is a holder in due course when admittedly the facts as to that issue are in dispute; (2) that the sole affidavit in support of the motion was made by one not in a position to know the facts; and (3) that plaintiff did not allege an inconsistent election of remedies in its pleadings. These issues will be referred to later in the opinion.

We will assume, as the parties do, but reluctantly and within our discretion for the purpose of this opinion, that the plaintiff, Bank of Commerce, was not a holder in due course of the $27,000 check given by Paine-Webber to Swidler.

The doctrine of election of remedies is defined as "the act of choosing between two or more different and coexisting modes of procedure and relief allowed by law on the same state of facts." [1] It is an equitable doctrine in nature. It applies to both offensive and defensive remedies and its general purpose is to prevent double redress for a single wrong.

"Its rationale is that courts will not permit suitors solemnly to affirm that a given state of facts exists from which they are entitled to a particular relief and afterward affirm or assume that a contrary state of facts exists, from which they are entitled to inconsistent relief." [2]

In *Rowell v. Smith* (1905), 123 Wis. 510, 522, 102 N. W. 1, Mr. Justice MARSHALL explained the doctrine in detail:

---

[1] 25 Am. Jur. 2d, *Election of Remedies,* p. 646, sec. 1.
[2] *Id.* at page 647.

"There is much inaccurate language in authorities on this subject. A mere election of remedies, where there are several, does not waive others. *Barth v. Loeffelholtz,* 108 Wis. 562, 84 N. W. 846. It is only where, as before indicated, there are several remedies which are inconsistent that the choice of one waives the rest. Such inconsistency is to be looked for in the relation between the parties which the different remedies suggest. If one sues for damages for breach of or to otherwise recover on contract corresponding relations are necessarily alleged or implied to exist, while, if growing out of the same transaction, that one sues to recover property parted with to the defendant on contract a termination of contractual relations by rescission is suggested. In one case a subsisting contract is assumed or alleged, in the other absence thereof is necessary. Failure to note the true test of whether the doctrine of election applies or not has led to so many instances of improper references thereto that great care must be exercised in the selection of judicial guides in a given situation or one will be liable to go astray. Where more than one remedy to deal with a single subject of action exists and they are inconsistent with each other, after the choice of one the others to all intents and purposes no longer exist. Where more than one remedy exists to deal with a single subject of action, but they are not inconsistent, nothing short of full satisfaction of the plaintiff's claim waives any of such remedies. All may be pursued concurrently, even to judgment, but satisfaction in one reaching the whole claim is a satisfaction in all. Where only one remedy exists, but the plaintiff asserts one which he does not in fact possess, the proper remedy is not waived."

It must be determined whether the remedies pursued by Paine-Webber are inconsistent. If the remedies are not inconsistent, the fact that Paine-Webber has obtained a judgment against Swidler will not bar its defense unless and until the judgment is satisfied or at least until it is *pro tanto* satisfied.

As noted in the foregoing quotation from *Rowell v. Smith, supra,* whether there is an inconsistency must be determined by the relations between the parties. Obvi-

ously a cause of action which attempts to rescind a contract between the parties is inconsistent with an assertion of a cause of action on the same contract. *Rowell v. Smith, supra; Barth v. Loeffelholtz* (1901), 108 Wis. 562, 84 N. W. 846. It is equally clear, however, that this rule does not apply where there are distinct and independent contracts. 1 Callaghan's Wisconsin Pleading and Practice, *Election of Remedies*, p. 293, sec. 7.06; *Arthur J. Straus Co. v. Weiskopf* (1923), 180 Wis. 323, 192 N. W. 1008.

The plaintiff-bank contends that Paine-Webber's suit against Swidler can be considered an affirmance by Paine-Webber of the sale of the securities to Swidler. The bank argues that refusal to honor the check given to Swidler in repurchasing those securities from Swidler is inconsistent as it amounts to a disaffirmance of its transaction with Swidler. This, we believe, is not so. The action against Swidler by Paine-Webber on its check was an action affirming the sale of the securities to him. But, refusing to pay the check given Swidler for repurchase of the securities does not require a renunciation or rescission of the sale of the securities to Swidler. At most, this would constitute a disaffirmance of the repurchase of the securities from Swidler; a completely separate transaction.

"It has been said that the so-called 'inconsistency of remedies' is not in reality an inconsistency between the remedies themselves, but must be taken to mean that a certain state of facts relied on as the basis of a certain remedy is inconsistent with, and repugnant to, another certain state of facts relied on as the basis of another remedy. For one proceeding to be a bar to another for inconsistency, the remedies must proceed from opposite and irreconcilable claims of right and must be so inconsistent that a party could not logically assume to follow one without renouncing the other. Two modes of redress are inconsistent if the assertion of one involves the negation or repudiation of the other. In this sense, incon-

sistency may arise either because one remedy must allege as fact what the other denies, or because the theory of one must necessarily be repugnant to the other. More particularly, where the election of a remedy assumes the existence of a particular status or relation of the party to the subject matter of litigation, another remedy is inconsistent if, in order to seek it, the party must assume a different and inconsistent status or relation to the subject matter." 25 Am. Jur. 2d, *Election of Remedies,* pp. 653, 654, sec. 11.

Absent a true inconsistency, the doctrine is completely inapplicable.

"If the remedies are recognized as consistent, and there is no conflict of legal position as between them, there is no necessity for an election between them and there is no election by following one course of action as against another, even though but one satisfaction can be had for the various judgments obtained." 1 Callaghan's Wisconsin Pleading and Practice, *Election of Remedies,* pp. 291, 292, sec. 7.05. *See also Rowell v. Smith, supra.*

The confusion in this case is a result of the apparent inconsistency of allowing Paine-Webber to assert as a defense nonpayment of an obligation when it has sued and received judgment on that obligation. At first look it appears as though there is a possibility of a double recovery. This ignores, however, that the defense of Paine-Webber is that the respondent stands in the position of Swidler. Assuming the bank is not a holder in due course, it acquired no better rights than held by Swidler.[3] There can be no contention that Paine-Webber

---

[3] Sec. 403.306, Stats., provides in part: **"Rights of one not holder in due course.** Unless he has the rights of a holder in due course any person takes the instrument subject to:

"(1) All valid claims to it on the part of any person; and

"(2) All defenses of any party which would be available in an action on a simple contract; and

"(3) The defenses of want or failure of consideration, nonperformance of any condition precedent, nondelivery, or delivery for a special purpose (s. 403.408)."

could not refuse to honor payment of the check to Swidler if he still held it simply because it had successfully obtained an uncollectible judgment against him. Obviously Paine-Webber could set off the amount owed by Swidler on the judgment if Swidler were to sue it on the check. The Bank of Commerce is in no better position unless it acquired the check as a holder in due course.

To the extent that there is a possibility of "double recovery," Paine-Webber clearly concedes it owes any recovery from Swidler *pro tanto* to the plaintiff bank. Should Paine-Webber be successful defending on a remand, the trial court by careful wording of the judgment can avoid any double recovery.

This court has indicated in relatively recent years that it does not favor the doctrine of election of remedies. In *Schlotthauer v. Krenzelok* (1956), 274 Wis. 1, 6, 79 N. W. 2d 76, the court quoted the New Hampshire Supreme Court with approval:

" 'The doctrine of election of remedies has been the subject of much adverse criticism by courts and commentators because of the substantial injustice which frequently results from its application. "At best this doctrine of election of remedies is a harsh, and now largely obsolete rule, the scope of which should not be extended." *Friederichsen v. Renard*, 247 U. S. 207, 213, [38 S. Ct. 450, 452, 62 L. Ed. 1075] ; *National Trans. Co. v. Toquet*, 123 Conn. 468 [196 A. 344]. Although it is doubtful if the doctrine is obsolete (*First Nat. Bank v. Flynn*, 190 Minn. 102) [250 N. W. 806, 92 A. L. R. 1272], the trend of the decisions has been to limit it to avoid injustice. Cf. 3 Williston, Contracts (1920), s. 1528 with 5 Williston & Thompson, Contracts (rev. ed. 1938) s. 1528 and Supp. (1946). *To accomplish this purpose the formal doctrine of election of remedies should be confined to cases where*

---

The official comment to the Uniform Commercial Code, 1962 Official Text With Comments, p. 282, sec. 3—306, states: " 'All valid claims to it on the part of any person' includes not only claims of legal title, but all liens, equities, or other claims of right against the instrument or its proceeds. It includes claims to rescind a prior negotiation and to recover the instrument or its proceeds."

*the plaintiff may be unjustly enriched or the defendant
has actually been misled by the plaintiff's conduct or the
result is otherwise inequitable or res judicata can be ap-
plied. National Lock Co. v. Hogland,* [7 Cir.] 101 Fed.
(2d) 576, 587. See 4 Bogert, Trusts and Trustees, s. 946,
p. 2738.' (Emphasis supplied.)" [4]

It is difficult to perceive how the bank has in any way
been misled by Paine-Webber's obtaining a judgment
against Swidler. Obviously there is no problem here in-
volving res judicata. And, Paine-Webber will not be
unjustly enriched. As already mentioned, the appellant's
defense is the failure of the judgment against Swidler to
be satisfied. Paine-Webber does not take the position
after asserting such a defense that the bank is not en-
titled to a partial assignment of its judgment against
Swidler.

Applying this doctrine of election of remedies in the
instant case could result in injustice. There was no ap-
parent way appellant could have avoided proceeding as
it did. Paine-Webber's action against Swidler involved
more than the $27,000 here under consideration. There
were other checks (none in the amount of $27,000) in-
volving Swidler and other banks resulting from the stock
sale and purchase transactions. Paine-Webber could not
forego action against Swidler on these checks simply be-
cause the Bank of Commerce might bring suit against it
on the $27,000 check, and it could not bring an action
against Swidler without including suit for the amount
involved in this action. To do so may have violated the
rule precluding splitting causes of action. *Cohan v. Asso-
ciated Fur Farms, Inc.* (1952), 261 Wis. 584, 597, 53
N. W. 2d 788; *Severson v. Milwaukee Automobile Ins. Co.*
(1953), 265 Wis. 488, 61 N. W. 2d 872; *Werner v. Riemer*
(1949), 255 Wis. 386, 39 N. W. 2d 457, 39 N. W. 2d. 917.
Under such circumstances, to require Paine-Webber to

---

[4] *See also Braun v. Jewett* (1957), 1 Wis. 2d 531, 541, 85 N. W.
2d 364.

make an election would not in fact be allowing an election but would be an absolute denial of a right to establish a defense to the suit by the Bank of Commerce. "The doctrine of election of remedies presupposes a choice between two or more remedies and a clear understanding of the nature of the remedies between which the election is made." 25 Am. Jur. 2d, *Election of Remedies*, p. 664, sec. 22. Under the circumstances presented in this case the appellant had no real choice of remedies.

The plaintiff bank cites several Wisconsin cases [5] and several cases from other jurisdictions [6] as being similar to the case at bar. None of these cases is controlling. All involved suits arising from one transaction and were attempts to recover on one cause of action. Furthermore, this court's statements in more recent cases indicate a contraction of the election of remedies doctrine. Older cases on the subject are of doubtful applicability simply because of the more recent trend in the area.

We hold the doctrine of election of remedies is not applicable to the case at bar.

In the forepart of the opinion we stated we would reluctantly assume the bank was a holder in due course. The complaint alleges the bank was a holder in due course; [7] the answer specifically denies it. The plaintiff's

[5] *Carter v. Smith* (1868), 23 Wis. 497; *Crook v. First National Bank of Baraboo* (1892), 83 Wis. 31, 52 N. W. 1131; *Davis v. Schmidt* (1906), 126 Wis. 461, 106 N. W. 119.

[6] *Cohen v. Metropolitan Life Ins. Co.* (1933), 238 App. Div. 789, 262 N. Y. Supp. 478, rehearing denied, 238 App. Div. 847, 859, 262 N. Y. Supp. 952, 263 N. Y. Supp. 954; *United States Fidelity & Guaranty Co. v. Fidelity National Bank & Trust Co.* (1937), 232 Mo. App. 412, 109 S. W. 2d 47; *National Surety Co. v. Perth Amboy Trust Co.* (3d Cir. 1935), 76 Fed. 2d 87.

[7] "403.302 **Holder in due course.** (1) A holder in due course is a holder who takes the instrument:

"(a) For value; and

"(b) In good faith; and

"(c) Without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person."

affidavit in support of the motion for summary judgment in no way establishes the bank was a holder in due course. Clearly, an important material question of fact is unresolved. The bank in its brief states:

"It is a fact that the trial court assumed that the plaintiff was a holder in due course in its decision. However, we submit that a perusal of the decision shows that it was predicated upon the election of remedies argument made by the plaintiff, and that the assumption made by the court could be stricken from the decision and the end result would be the same.

"We have no objection to the Supreme Court assuming for the purposes of this appeal that the plaintiff was not a holder in due course. . . ."

If the bank was in fact a holder in due course, Paine-Webber readily admits it would have no defense to the bank's action on the $27,000 check. If upon a trial of the issues it is determined that the bank is a holder in due course, Paine-Webber has no defense and the issue of election of remedies is completely moot. Our opinion on the election of remedies, although the law of the case, is advisory dependent upon a resolution of the facts of the case. We deem this to be a misuse of the summary judgment procedure.

"Without citation of authority it can be stated that summary judgment is a drastic remedy and should not be granted if any material facts are in dispute or if the inferences which may reasonably be drawn from the facts are doubtful. . . . The material evidentiary facts must appear with certainty; the court cannot act as a trier of disputed facts on a motion for summary judgment; it cannot pass upon the weight and credibility of disputed facts or doubtful inferences as they appear from affidavits, other documents, or pleadings." *Peterson v. Maul* (1966), 32 Wis. 2d 374, 376, 377, 145 N. W. 2d 699.

For some time the court has been concerned by what appears to be misuse or excessive use of the motion for summary judgment. Quotations from a few recent cases should make this apparent:

"This matter comes to this court as an appeal from an order on a motion for summary judgment. We have treated it as such and this decision is the law of the case. The court, however, has grave doubts that summary judgment is a proper remedy. The respondent in his complaint alleges the appellant made a slanderous statement. The appellant in his answer specifically denied it. Clearly an important issue of fact remains undetermined. We recognize that the complaint did not set forth the circumstances under which the statement was made with sufficient detail to show that it was in connection with a judicial proceeding and that the allegations necessary for this fact appear in the affirmative defense in the appellant's answer. This deficiency could have been remedied by a motion to make more definite and certain and then the principal issue raised by demurrer. We do not believe that summary judgment should be used to determine hypothetical questions based upon assumed facts." *Spoehr v. Mittelstadt* (1967), 34 Wis. 2d 653, 663, 664, 150 N. W. 2d 502.

The dissenting opinion in *Spoehr v. Mittelstadt, supra,* states at page 664:

"I think summary judgment is not the proper remedy to decide a legal question posed on hypothetical facts, but assuming the remark was made it was not pertinent or relevant to the case."

In *Frewe v. Dupons Construction Co.* (1968), 37 Wis. 2d 676, 689, 155 N. W. 2d 595, the court said:

"That issue is not properly before the court in this motion for summary judgment because it could not affect the right of the plaintiffs nor the defendant gas company to pursue their claims against the city. Further, advisory opinions dependent upon a resolution of factual disputes have no place in a decision on a motion for summary judgment."

We stated in *Schandelmeier v. Brown* (1968), 37 Wis. 2d 656, 658, 659, 155 N. W. 2d 659:

"This is one of seven appeals out of 28 heard this assignment involving a motion for summary judgment.

Lately the court has noticed an increase in appeals from orders denying summary judgment and is concerned. Perhaps the remedy of summary judgment is misunderstood as some kind of a short cut to avoid a trial and to obtain quick relief at the expense of a searching determination for the truth. The remedy of summary judgment does not lend itself to many types of cases, especially those which are basically factual and depend to a large extent upon oral testimony. Then, too, in a great number of cases the statute has not been complied with and affidavits have been made by attorneys and others who obviously do not have personal knowledge of the facts. Frequently, the opposition does not take the motion seriously and the record before us is so sketchy that justice demands a denial of the motion.

". . .

"Basically, the purpose of the remedy of summary judgment was to prevent sham pleadings and delay. It was not to take the place of a demurrer, motion for judgment on the pleadings, or of a trial. Many times we have said it is a drastic remedy and not a trial on affidavits. In fact, sec. 270.635, Stats., expressly provides the party opposing the motion need only show by affidavit or other proof facts which the court deems sufficient to entitle him to a trial. How facts in an affidavit generally prepared in the language of counsel and not tested by the searchlight of cross-examination can become something else at a trial is well illustrated in a case which was appealed to this court first upon a denial for summary judgment and later after a trial of the merits. See *Becker v. La Crosse* (1960), 9 Wis. 2d 540, 101 N. W. 2d 677; (1961), 13 Wis. 2d 542, 109 N. W. 2d 102."

As a caveat we announce that henceforth this court will not, and trial courts should not, accommodate the improper use of a motion for summary judgment.

Because we have determined that the motion for summary judgment should not have been granted and that there should be a trial on the issues formed by the pleadings, we do not reach the appellant's other contentions as to the affidavits in support of the motion.

*By the Court.*—Judgment reversed and remanded for further proceedings.