APPLETON CHINESE FOOD SERVICE, INC., d/b/a Dragon Gate Restaurant, Shyh Fann Tyan and Bin Ti Tyan, Plaintiffs-Respondents,†

v.

MURKEN INSURANCE, INC. and Utica Mutual Insurance Company, Defendants-Appellants,††

UNITED FIRE & CASUALTY COMPANY, Defendant.

Court of Appeals

*No. 93–1948. Submitted on briefs April 4, 1994.—Decided June 7, 1994.*

(Also reported in 519 N.W.2d 674.)

†Petition for cross review denied.
††Petition to review denied.

794

On behalf of defendants-appellants, the cause was submitted on the briefs of *Burton A. Strnad* of Milwaukee.

On behalf of plaintiffs-respondents, the cause was submitted on the brief of *Christopher H. Evenson* and *Sigman, Janssen, Stack, Wenning & Sutter* of Appleton.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. Murken Insurance, Inc., and its errors and omissions carrier, Utica Mutual Insurance Company, appeal a judgment awarding damages to Appleton Chinese Food Service, Inc. (ACFS) and Shyh Fann Tyan and Bin Ti Tyan, for their damages arising from Murken's negligent failure to procure requested insurance coverage. ACFS, owned by the Tyans, ran the Dragon Gate Restaurant in a building also owned by the Tyans. When a fire destroyed the building, the Tyans discovered that their United Fire & Casualty Company insurance policy provided only actual cash value coverage; it did not provide either the requested replacement cost or lost business income coverage.[1]

---

[1] The record does not reflect how the United Fire policy defines "actual cash value" and "replacement cost" coverage. However, these terms are defined under a policy the Tyans considered buying. The trial court relied on that policy's definitions of these terms. The parties also rely on these definitions. Because the parties rely on these definitions, we accept them. Under the terms of that policy:

> "Actual Cash Value" means *replacement cost* less depreciation (including obsolescence) of that part of the property sustaining loss

They sued Murken for failing to procure the proper coverage and, following a bench trial, were awarded damages.

We address these issues: (1) The sufficiency of the evidence to show the Tyans requested replacement cost coverage; (2) the application of *Nelson v. Davidson*, 155 Wis. 2d 674, 456 N.W.2d 343 (1990), which insulates insurance agents from liability for failing to advise an insured of available coverages; (3) whether plaintiffs' release of United Fire released Murken from liability; and (4) whether the court erred in its damage award. For the reasons explained hereafter, we affirm the judgment, with the exception of the court's award of lost business income damages. We therefore affirm in part and reverse in part.

## BACKGROUND

A fire destroyed the Tyans' building and shut down the Dragon Gate Restaurant on December 5, 1990. The building was insured by United Fire under a policy procured by Murken, an independent insurance agency. The policy provided $140,000 in actual cash value coverage, and it did not provide any type of business interruption coverage. Following the fire, United Fire appraised the building at an actual cash value of $52,200 and paid that sum, less deductible, to the Tyans.

at the time and place of loss, but not exceeding the cost to repair or replace with material of like kind and quality within a reasonable time after the loss.

. . . .

"Replacement Cost" means the full cost of repair or replacement at the time and place of loss without deduction for depreciation. (Emphasis in original.)

The Tyans and ACFS filed suit against Murken and United Fire. The complaint alleged that the Tyans had requested a policy with replacement cost coverage and lost business income coverage. It alleged that Murken was liable in contract and tort for failing to procure the requested coverage. It further alleged that United Fire was jointly liable with Murken for the failure to procure. It also alleged grounds for reformation of the insurance policy. Prior to trial, the Tyans and ACFS settled with United Fire for $2,000 and stipulated to a *Pierringer* release,[2] releasing United Fire from liability for all of plaintiffs' or remaining defendants' claims.

After a six-day bench trial, the court issued extensive findings of fact and conclusions of law. It found that Tyan had met with a Murken insurance agent, Sue Priewe, and sufficiently communicated his request for $140,000 replacement cost coverage on the property. He also requested lost business income coverage for ACFS. Consistent with this request, Priewe prepared seven applications to various insurers seeking quotes or price estimates for $140,000 replacement cost coverage on Dragon Gate.

Due to Murken's clerical error, the applications did not request lost business income coverage and, consequently, none of the quotes Priewe received contemplated such coverage. This fact was never discovered because the quotes were never thoroughly reviewed. On Priewe's recommendation, the Tyans eventually selected United Fire. The court concluded that coverage was initially bound at replacement cost coverage. However, before the policy was issued, United Fire informed Priewe it could not issue replace-

---

[2] *Pierringer v. Hoger*, 21 Wis. 2d 182, 124 N.W.2d 106 (1963).

ment cost coverage and instead proposed writing the policy at actual cash value. Priewe agreed to this proposal without consulting the Tyans. The policy was ultimately issued at actual cash value and, due to the earlier error, did not include lost business income coverage.

The court concluded that Priewe had breached her duty to the Tyans to exercise reasonable skill, care and diligence in obtaining the requested coverage. It concluded that she was negligent in preparing the United Fire application for coverage and by failing to adequately review the quote and the policy to determine that they included the coverage for which she intended to apply. The court also concluded that Priewe negligently failed to notify the Tyans that the United Fire policy was issued at actual cash value coverage. The court found United Fire and the Tyans were negligent to a lesser extent. It awarded the Tyans damages of $140,000 minus the deductible and actual cash value settlement they had already received. It awarded ACFS lost business income in the amount of $21,364. These damages were reduced by the Tyans' and United Fire's share of negligence. Other facts will be discussed as needed.

## SUFFICIENCY OF THE EVIDENCE

We reject Murken's argument that the finding that the Tyans requested replacement cost coverage is unsupported by the evidence.[3] A trial court's findings

---

[3] We decline to review Murken's alternative argument that it cannot be liable because, as a matter of law, the Tyans' policy must be construed as containing replacement cost coverage. It argues that when United Fire, on Priewe's authorization, changed the coverage to actual cash value, it was required to

of fact shall not be set aside on appeal unless they are clearly erroneous. Section 805.17(2), STATS. The trial court, not the appellate court, judges the credibility of witnesses and the weight of their testimony. *State v. Wyss,* 124 Wis. 2d 681, 694, 370 N.W.2d 745, 751 (1985). If the evidence permits more than one reasonable inference, appellate courts must accept the one drawn by the trial court. *C.R. v. American Std. Ins. Co.,* 113 Wis. 2d 12, 15, 334 N.W.2d 121, 123 (Ct. App. 1983).

The trial court found that Mr. Tyan sufficiently expressed his desire for replacement cost coverage to Murken. It found that while Tyan did not understand the difference between the formal terms "replacement cost" coverage and "actual cash value" coverage, he clearly, consistently and unambiguously communicated to Murken a desire for $140,000 coverage so that he could replace the building and get back into business in the event of a total loss. It found that the

---

notify the Tyans of cancellation or change pursuant to § 631.36, STATS. It claims that the Tyans never received the required notice, and therefore coverage continued as bound at replacement cost.

Murken did not plead or prove this contention at trial. Despite its citation to a "critical passage" in its post-trial brief, we find only an argument that coverage was originally bound at actual cash value. In furtherance of this argument, Murken suggested in a single sentence that if the policy had been bound at replacement cost coverage, there would have been cancellation of coverage that would have required notice. An appellate court will generally not review issues raised for the first time on appeal. *Wirth v. Ehly,* 93 Wis. 2d 433, 443-44, 287 N.W.2d 145-46 (1980). The factual and legal issues of whether United Fire was required to send or, in fact, sent a statutory notice of cancellation or change, was not presented as an issue to the trial court, and we decline to address it here for the first time.

insurance applications were prepared in part based on this communication. It noted this finding was consistent with the property's coverage history, and with Priewe's preparing seven applications for $140,000 replacement cost coverage.

Mr. Tyan testified in broken English that after Priewe introduced herself as a Murken agent, she asked him why he was insuring his property for $140,000. He testified that he told her he wanted $140,000 in coverage to "cover in case fire because that old structure." He also told her that he purchased the building for $65,000 and had spent $20,000 improving the building. Priewe sought replacement cost coverage on the property. While she testified that this was her normal practice and not a response to the Tyans' specific request, the court could doubt the credibility of this testimony.

At the time Priewe met with Tyan, the property was insured through a different company for $140,000 under an actual cash value policy, though Tyan believed he was covered at replacement cost. The court could reasonably infer Priewe was motivated to ask Tyan why he wanted $140,000 coverage because she knew the building was currently insured at $140,000 actual cash value and believed such coverage far exceeded the property's value. The property's actual cash value turned out to be $52,200, and its replacement cost exceeded $140,000. This disparity, coupled with Priewe's knowledge that only $85,000 had been invested in the property, reinforces the inference that Priewe would have been aware that $140,000 in actual cash value coverage was excessive.

■ The court could also infer that when Tyan explained to Priewe that he needed $140,000 in cover-

age because it was an old structure, he was expressing his belief that the building's actual cash value was well below its replacement cost, and therefore he needed replacement cost coverage. The court could further reasonably infer that Priewe understood this expression, as is evidenced by her request for replacement cost coverage. The court's finding that Tyan sufficiently expressed his request for replacement cost coverage is not clearly erroneous. *See* § 805.17(2), STATS.

## APPLICATION OF *NELSON*

■

We also reject Murken's assertion that concluding that imposition of liability violates the holding of *Nelson*. The extent of an insurance agent's duty to the agent's clients, and liability for actions, involve issues of law and public policy that we review de novo. *Id.* at 679, 456 N.W.2d at 345.

In *Nelson*, the injured plaintiffs sued their insurance agents for failing to advise them of their need for underinsured motorist coverage. *Id.* at 678, 456 N.W.2d at 344-45. The *Nelson* court concluded that an insurance agent has no affirmative duty, absent special circumstances, to inform an insured concerning the availability or the advisability of insurance coverage. *Id.* at 685, 456 N.W.2d at 347.

■

*Nelson* is readily distinguishable. Murken's liability is premised upon its failure to procure coverage that the Tyans actually requested. As our supreme court has noted, " '[a]n insurance broker is bound to exercise reasonable skill and diligence in the transaction of the business entrusted to him and he will be responsible to his principal for any loss from his failure to do so . . . .' " *Master Plumbers Ltd. Mut. Liab. Co. v. Cormany &*

*Bird, Inc.,* 79 Wis. 2d 308, 313, 255 N.W.2d 533, 535 (1977) (quoting *Kane Ford Sales, Inc. v. Cruz,* 255 N.E.2d 90, 91 (Ill. App. Ct. 1970)); *see also* WIS J I—CIVIL 1023.6.[4] Holding Murken liable for its negligence does not violate the policy and precedent of *Nelson.*[5]

## EFFECT OF PLAINTIFFS' SETTLEMENT WITH UNITED FIRE

We next reject Murken's claim that it cannot be independently liable for failing to procure the requested coverage. It claims that it was acting as an agent for United Fire, a disclosed principal, and that under agency law it cannot be personally liable to the Tyans for acts performed within the scope of its authority. Because the Tyans have already settled with and

---

[4] WIS J I—CIVIL 1023.6 states in part:

NEGLIGENCE OF INSURANCE AGENT

An insurance agent, such as (defendant), must use the degree of care, skill, and judgment which is usually exercised under the same or similar circumstances by insurance agents licensed to sell insurance in Wisconsin.

While there is no duty to advise the policy holder of coverages available, the agent must use reasonable skill and diligence to put into effect the insurance coverage requested by his or her policy holder; act in good faith towards that policy holder, and inform him or her of the minimum statutory requirements. A failure on the agent's part to use that skill or diligence constitutes negligence.

[5] We also summarily reject Murken's argument that because the Tyans requested replacement cost coverage, they were required to seek reformation. While the Tyans might have first sought reformation, the right to sue an insurance agent without first seeking reformation is generally recognized. *See Estate of Ensz v. Brown Ins. Agency,* 66 Wis. 2d 193, 202, 223 N.W.2d 903, 909 (1974).

fully released United Fire, Murken argues that it cannot be liable. We disagree.

An agent of a disclosed principal is relieved of liability where the agent effects a binding contract of insurance that conforms to the agreement between the agent and the insured. *See* 4 COUCH ON INSURANCE 2D § 26A:289 (1984). The policy here did not conform to the agreement between Murken and Tyan. "The negligent failure of an insurance agent to issue a policy, pursuant to an agreement relied upon by the applicant, renders the agent liable in tort for loss resulting therefrom." *Id.* at § 26A:292.

As a general rule, agency law does not insulate an agent from liability for the agent's torts. *Ford v. Wisconsin Real Estate Exam. Bd.*, 48 Wis. 2d 91, 102, 179 N.W.2d 786, 792 (1970) (citing RESTATEMENT (SECOND) OF AGENCY § 343).[6] Thus, even where an insured has settled and released an insurer, the agent may remain personally liable in tort to the insured for failing to procure the proper insurance. *See, e.g., Smith v. Childs*, 497 N.W.2d 538, 541 (Mich. Ct. App. 1993) (the liability of the agent is not dependent on relationship to principal but is attributable to agent's own misconduct); *Grimes v. Liberty Nat'l Life Ins. Co.*, 514 So. 2d

---

[6] RESTATEMENT (SECOND) OF AGENCY § 343 (1958) states:

An agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal, except where he is exercising a privilege of the principal, or a privilege held by him for the protection of the principal's interests, or where the principal owes no duty or less than the normal duty of care to the person harmed.

Comment d states in part that "[a]n agent who assists another agent or the principal to commit a tort is normally himself liable as a joint tort feasor for the entire damage."

965, 967-68 (Ala. 1987) (agent of disclosed principal independently liable for own tortious conduct); 4 COUCH, *supra*, § 26A:293 ("The agent of the insurer is personally liable for loss sustained by the insured because of the agent's tort.").

More importantly, while Murken was United Fire's agent in some respects, it acted as the Tyans' agent in seeking to procure for them the requested coverage. As the court noted: "We therefore do not look to Murken merely as United Fire's agent for contract purposes. Rather, Murken can be considered as having separate duties to the plaintiff." This conclusion is supported by the evidence. Murken did not represent any one insurer. Well before the Tyans chose United Fire, Murken was acting on their behalf in seeking coverage from different companies. Murken's negligence in completing applications for estimates occurred before the Tyans were bound to United Fire.

Wisconsin cases suggest the "separate duties" Murken owed to the Tyans spring in part from a principal-agent relationship created when an agent agrees to procure insurance for a client. *See, e.g., Nelson*, 155 Wis. 2d at 684, 456 N.W.2d at 347 (a client's reliance on and confidence in an agent do not imply a duty to advise; "[t]he principal-agent relationship cannot be so drastically expanded unilaterally."); *Milwaukee Bedding Co. v. Graebner*, 182 Wis. 171, 180-81, 196 N.W. 533, 536-37 (1923) (where an agent represents several insurance companies, the agent becomes the agent of the insured for the purpose of selecting the company). The principal-agent relationship may not rise to the level of a duty to advise, but it certainly extends to an independent duty to act with reasonable care, skill and diligence in procuring the agreed upon coverage. *See,*

805

*e.g.*, 43 Am. Jur. 2D *Insurance* § 139 (1982) ("The agent or broker is liable on the theory that he is the agent of the insured in negotiating for a policy and that he owes a duty to his principal to exercise reasonable skill, care, and diligence in effecting the insurance.").

The concept of dual agency is familiar to Wisconsin and the insurance industry. *See, e.g., Trible v. Tower Ins. Co.*, 43 Wis. 2d 172, 181-82, 168 N.W.2d 148, 153 (1969) (independent soliciting insurance broker was also agent of insurer by operation of statute); 16 Appleman, Insurance Law & Practice § 8736 (1981) ("It is not unusual for an insurance agency to represent both insurer and insured."). As a dual agent, Murken is independently liable to the Tyans for its negligence while acting as their agent. *See, e.g., G.T.S. Co. v. Russell, Gleason & Van Rooy, Inc.*, 148 Cal. Rptr. 786 (Cal. Ct. App. 1978) (release of insurer did not bar recovery from agents where insurance agents incurred direct liability in acting in dual capacity promising to procure proper insurance). Consequently, the Tyans' settlement and release of United Fire does not preclude Murken's independent liability.

Murken asserts that *Trible* supports its position that once the insured settles against one party, it is not entitled to sue the other. In *Trible*, plaintiff recovered against the insurer after the trial court reformed the insurance contract. The court dismissed the cause of action against the agency. The supreme court affirmed the dismissal, explaining that because the insured had sued on alternative theories and been awarded a judgment, he was not entitled to recover on his tort action against the agency. *Id.* at 184-85, 168 N.W.2d at 155; *see also Hause v. Schesel*, 42 Wis. 2d 628, 636, 167 N.W.2d 421, 425 (1969) (insured who received judg-

ment against agent for failure to procure not entitled to also recover in contract against insurer).

This case is readily distinguishable from *Trible* and *Hause*. The dismissals in those cases were based on election of remedies. Election of remedies is an equitable doctrine. *Bank of Commerce v. Paine, Webber, Jackson & Curtis*, 39 Wis. 2d 30, 36, 158 N.W.2d 350, 352 (1968). Wisconsin does not favor the doctrine of election of remedies. *Tuchalski v. Moczynksi*, 152 Wis. 2d 517, 520, 449 N.W.2d 292, 293 (Ct. App. 1989) (citing *Bank of Commerce*, 39 Wis. 2d at 40-41, 158 N.W.2d at 354). "It results in substantial injustice, is harsh, and largely obsolete." *Id.* "It should be confined to cases where the plaintiff may be unjustly enriched, where the defendant has been misled, or the result is otherwise inequitable or res judicata applies." *Id.* "The real purpose of the doctrine is to prevent double recovery." *Id.*

There is no threat the Tyans will be unjustly enriched by a double recovery. In both *Trible* and *Hause*, plaintiffs had recovered their damages at trial. Here, the Tyans received only $2,000 in their settlement with United Fire, while the court found actual damages in excess of $100,000. The Tyans are not unjustly enriched by recovering the remainder of their damages in their action against Murken.[7] Relatedly, res judicata is inapplicable. The finality of the judgments in *Trible* and *Hause* sensibly precluded further

---

[7] Other courts have suggested that a plaintiff's settlement with the insurer will only be an election of remedies bar in a subsequent action against the agent where the plaintiffs recovered most or more than their claim in their settlement. *See, e.g.,* *Tippit v. Tippit*, 865 S.W.2d 624 (Tex. App. 1993).

litigation of the same issues. Here, however, the settlement with United Fire was not a final adjudication of factual matters that preclude relitigation of those same issues. We therefore conclude that the Tyans' settlement with United Fire was not an election of remedies barring their recovery from Murken.

## LOST BUSINESS INCOME DAMAGES

Murken argues that the court erred by awarding $21,364 in lost business income to ACFS. Murken contends that ACFS is entitled only to compensation for net profits lost and expenses actually incurred in resuming operations. Because ACFS never resumed operations, it claims that ACFS never incurred any expenses for which it was entitled to compensation. It further asserts that no evidence produced at trial indicates any expenses were incurred in resumption of services. It concludes that ACFS was only entitled to net profits totaling $998.62. We agree that the court's determination of lost business income damages is unsupported by evidence in the record.

Damages arising out of a broker's failure to procure insurance are commonly determined by the terms of the policy the agent failed to procure. *Wagner v. Falbe & Co.*, 272 Wis. 25, 27-28, 74 N.W.2d 742, 744 (1956). Here, Murken failed to procure lost business income coverage from United Fire. Thus the terms of that policy control. Where the terms of the policy are unambiguous, we will simply apply those terms instead of engaging in construction. *Nelson v. Motor Tech, Inc.*, 158 Wis. 2d 647, 650, 462 N.W.2d 903, 904-05 (Ct. App. 1990).

We agree with Murken that the United Fire policy unambiguously limits coverage to lost net profit and

expenses actually incurred in resuming operations. The policy pays for the actual loss of business income, defined as net profit that would have been earned and operating expenses incurred. The "operating expenses" are any expenses, including payroll, that are necessary to resume operations.[8]

---

[8] The policy's business income coverage states in part:

A. COVERAGE

. . . .

We will pay for the *actual loss* of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the premises described in the Declarations, including personal property in the open (or in a vehicle) within 100 feet, caused by or resulting from any Covered Cause of Loss.

1. Business Income

Business Income means the:

a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

b. Continuing normal operating expenses *incurred*, including payroll.

. . . .

D. LOSS CONDITIONS

. . . .

4. Loss Determination

a. The amount of Business Income loss will be determined based on:

(1) The Net Income of the business before the direct physical loss or damage occurred;

(2) The likely Net Income of the business if no loss or damage occurred;

(3) The operating expenses, including *payroll expenses, necessary to resume "operations"* with the same quality of service that existed just before the direct physical loss or damage . . . . (Emphasis added.)

809

The court's characterization of the lost business income damage award is consistent with the terms of the policy. In addition to awarding net profit, it awarded ACFS's payroll expenses to the Tyans. The court stated "[i]t is [Tyan's] ongoing efforts on behalf of the corporation while addressing the implications of the fire, that provide basis for the claim . . . ." We assume, arguendo, that Tyan's services in addressing the fire's implications constitutes an incurred expense necessary to resume operations within the meaning of the policy.[9] The court's finding as to the value of these services, however, is not supported by the record and thus is clearly erroneous. Section 805.17(2), STATS.

The court's award was based on calculations provided by an independent claims adjuster and the Tyans' accountant. Both witnesses made it clear that the figures provided to the court were estimated projections of what expenses ACFS would have incurred had its operations continued. These projections include amounts that ACFS would have paid to the Tyans. They are not, however, evidence of operating expenses ACFS necessarily incurred in resuming operations. Payroll expenses ACFS would have incurred as a going concern are not necessarily identical to the payroll expenses actually incurred due to the Tyans address-

---

[9] Contrary to Murken's interpretation, we conclude that the policy does not require that expenses actually be paid before they are incurred. "Incur" means "to render liable or subject to." WEBSTER'S THIRD NEW INT'L DICTIONARY 1146 (Unabr. 1976). A business need not actually pay expenses to be rendered liable for or subject to those expenses. However, because operations never actually resumed, it is arguable whether the Tyans' expenses were necessary to resume operations within the meaning of the policy.

ing the fire's implications. Neither witnesses' calculations nor testimony contains evidence of the extent or the value of services the Tyans actually provided. The other expenses purportedly incurred also rely on the projections of the operating expenses that would have been incurred but for the fire. In the absence of evidence of expenses actually incurred in the resumption of operations, we conclude that the Tyans were only entitled to their net profits.[10]

In conclusion, the court's finding that the Tyans requested replacement cost coverage was not clearly erroneous. Murken's liability for negligently failing to procure the requested coverage is not precluded by the policy of *Nelson* or the Tyans' settlement with United Fire. We conclude, however, that the lost business income award was not supported by the record. We therefore reverse that award.

*By the Court.*—Judgment affirmed in part and reversed in part. No costs on appeal.

---

[10] We refuse to consider Murken's claim that the Tyans were not entitled to replacement cost coverage damages because they did not rebuild as contemplated by the policy. While the argument is persuasive on its face, the issue is not properly before us. Murken concedes it did not raise the issue at trial. After trial, it filed a motion pursuant to § 806.07, STATS., to reopen and vacate the judgment based on this argument. That motion is a separate proceeding requiring a separate appeal. The original judgment is still final while Murken's motion is pending, *see* § 806.07(2), and thus we have jurisdiction to consider this appeal. However, we have no jurisdiction to consider Murken's motion until the court enters a final order on that motion. *See* § 808.03, STATS.