David G. PORTER and Mary A. Porter,
Plaintiffs-Appellants,

v.

FORD MOTOR COMPANY, Defendant-Respondent.

Court of Appeals

*No. 2014AP975. Submitted on briefs February 27, 2015.
—Decided April 21, 2015.*

2015 WI App 39

(Also reported in 865 N.W.2d 207.)

507

APPEAL from an order of the circuit court for Milwaukee County: PAUL R. VAN GRUNSVEN, Judge. *Affirmed.*

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Timothy J. Aiken, Vincent P. Megna* and *Susan M. Grzeskowiak* of *Aiken & Scoptur, S.C.,* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Beth Ermatinger Hanan* of *Gass Weber Mullins LLC* of Milwaukee.

Before Curley, P.J., Kessler, J. and Thomas Cane, Reserve Judge.

¶ 1 CURLEY, P.J. David G. and Mary A. Porter ("the Porters") appeal the order denying their motions after verdict regarding their WIS. STAT. § 218.0171 (2011–12)[1] Lemon Law claim against Ford Motor Company. On appeal, the Porters argue that they should have been granted judgment notwithstanding the verdict on their Lemon Law claim because Ford should not have been allowed to present "inconsistent" defenses, which were: that the 2010 Ford Escape that the Porters purchased was not a "lemon," and, even if it was a "lemon," Ford provided a "comparable" replacement. The Porters also argue that they should be granted judgment notwithstanding the verdict because Question 4 from the special verdict—which asked the jury whether Ford provided the Porters "with a comparable new motor vehicle as a replacement for the" 2010 Escape—was not required for recovery under the Lemon Law and should have been stricken. We disagree and affirm.

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

BACKGROUND

¶ 2. In February 2010, the Porters bought a 2010 Ford Escape. The vehicle had a "Sangria Red Metallic" exterior and "Stone"-colored "premium cloth seats." The Porters chose the red exterior because Mrs. Porter's first car as a teenager was red; they chose the light-colored interior because dark interiors made Mr. Porter feel "very enclosed" and because dark colors grew hot in the summer.

¶ 3. While the Escape's colors were perfect, the transmission was not. According to Mrs. Porter, the vehicle would pop in and out of gear when she stepped on the gas pedal and "jerk back and forth" when she tried to accelerate. Between June 2010 and July 2012, the Porters brought in the Escape for repairs approximately nine times, and, according to the Porters, the vehicle was out of service for more than thirty days in the first year after they purchased it.

¶ 4. When numerous repairs failed to correct the problem, the Porters, through counsel, sent Ford a Lemon Law notice, see WIS. STAT. § 218.0171, seeking a comparable new vehicle. Ford received the notice on September, 6, 2011, which, pursuant to § 218.0171(2)(c), gave Ford until October 6, 2011 to provide the Porters with a new vehicle. On October 6, 2011, Ford's counsel informed the Porters that a comparable new vehicle was available, and Mr. Porter went to the dealership to collect it.

¶ 5. Mr. Porter discovered that the "comparable" replacement vehicle that Ford had provided was, in his family's opinion, nothing of the sort. The vehicle was in fact a 2012 Escape and had all of the same equipment and accessories as the 2010 Escape; however, the interior was dark and the exterior was blue. The

511

Porters would not have purchased an Escape that was not red with a light-colored interior, and they rejected the replacement vehicle because the colors were wrong. The next day, October 7, 2011, Ford faxed a letter insisting that the proposed replacement vehicle *was* comparable and that Ford satisfied any obligations under the Lemon Law. Ford also offered to research further replacement options, but by that point the Lemon Law's thirty-day compliance period had expired, so the Porters sued.

¶ 6. The Porters sued Ford under several theories, including, as relevant to this appeal, violation of Wisconsin's Lemon Law. In its answer and at trial, Ford denied that the 2010 Escape had been out of service for thirty or more days in the first year following purchase and denied that Ford failed to provide the Porters with a comparable new vehicle.

¶ 7. At trial, the jury was asked to answer the following four questions on a special verdict form:

(1) "Did the Porter vehicle have at least one nonconformity?"

(2) "Did the same nonconformity found to exist in Question 1 continue to exist after the fourth time the vehicle was made available to Ford or its authorized dealers for repairs?"

(3) "Was the Porter vehicle out of service for an aggregate of at least 30 calendar days within the first year after delivery because of warranty nonconformities?"

(4) "After receiving notice of the nonconformity found to exist in Question 1, did Ford Motor Company

provide David and Mary Porter with a comparable new motor vehicle as a replacement for the subject vehicle?"[2]

The jury was directed to answer Questions 2 and 3 only if it answered "Yes" to Question 1, and to answer Question 4 only if it answered "Yes" to either Questions 2 or 3.

¶ 8. The jury answered all four questions "Yes," finding that the 2010 Escape was a "lemon" but that Ford did not violate the Lemon Law because it provided the Porters with a comparable vehicle.

¶ 9. Thereafter, the Porters filed motions after verdict. As relevant here, the Porters argued that they should be granted judgment notwithstanding the verdict on their Lemon Law claim because the defense should not have been allowed to argue defenses that the Porters claimed were "inconsistent," namely: that the 2010 Escape was not a lemon, and, even if it was a lemon, Ford provided a "comparable" replacement. The Porters also moved to strike Question 4 from the special verdict, or, in the alternative, to change the jury's answer to Question 4 from "Yes" to "No" because "a blue vehicle with a dark charcoal interior cannot be comparable to a red vehicle with a beige interior as a matter of law."

¶ 10. The trial court denied the Porters' motions. It did, however, acknowledge that the Porters did not want either the vehicle they originally purchased or the replacement vehicle that Ford provided, and pursuant to *BCR Trucking, LLC v. PACCAR, Inc.*, 2009 WI

---

[2] We note that the special verdict form at issue had six questions; however, only the first four questions are relevant to the case, as those were the questions answered by the jury, and the fourth question in particular is the question the Porters take issue with on appeal.

App 36, 316 Wis. 2d 465, 476, 765 N.W.2d 828, ordered Ford to issue the Porters a refund for the purchase price of the 2010 Escape and ordered the Porters to return the car.[3]

¶ 11. The Porters now appeal.

### ANALYSIS

¶ 12. On appeal, the Porters renew two of the arguments made in their motions after verdict.[4] They argue that they should be granted judgment notwithstanding the verdict on their Lemon Law claim because Ford should not have been allowed to present the "inconsistent" defenses that the 2010 Escape was not a lemon, and, even if it was a lemon, that Ford provided a "comparable" replacement. The Porters also argue that they should be granted judgment notwithstanding the verdict because Question 4 from the special verdict was a "surplus" question that should be stricken.[5]

---

[3] The trial court also refused to award costs and attorney fees pursuant to WIS. STAT. § 218.0171(7) because the Porters did not prevail at trial. *See id.*

[4] Although the Porters argued at trial and in their motions after verdict that the color of the replacement vehicle's interior and exterior rendered the replacement not "comparable" to the vehicle they purchased, they do not raise that argument on appeal.

[5] The Porters present additional arguments as well, including that Ford was prohibited by law from arguing that the 2010 Escape was not a "lemon" while simultaneously offering a replacement vehicle for "customer service reasons." These additional arguments do not differ in legal substance from the issues identified above and we will therefore not address them separately. Likewise, to the extent any issue from the briefs has not been addressed, we conclude it is not dispositive. *See, e.g., State v. Waste Mgmt. of Wisconsin, Inc.*, 81 Wis. 2d 555, 564, 261 N.W.2d 147 (1978).

514

## A. Standards of Review

¶ 13. "A motion for judgment notwithstanding the verdict 'does not challenge the sufficiency of the evidence to support the verdict,' " but rather, "asserts that 'for reasons evident in the record which bear upon matters not included in the verdict, the movant should have judgment.' " *See Danner v. Auto-Owners Ins.*, 2001 WI 90, ¶ 41, 245 Wis. 2d 49, 629 N.W.2d 159 (citations omitted); *see also* WIS. STAT. § 805.14(5)(b) (2013–14). "In other words, a JNOV motion assumes that a jury verdict is supported by sufficient evidence, but asserts that judgment should be granted to the moving party on grounds other than those decided by the jury." *Dakter v. Cavallino*, 2014 WI App 112, ¶ 16, 358 Wis. 2d 434, 856 N.W.2d 523. We review the trial court's decision on the Porter's motion for judgment not withstanding the verdict independently, but with the benefit of the trial court's analysis. *See Danner*, 245 Wis. 2d 49, ¶ 41.

¶ 14. A motion to change a verdict answer, on the other hand, does challenge the sufficiency of the evidence to sustain the answer, and the burden the movant must overcome is higher. *See Kovalic v. DEC Int'l, Inc.*, 161 Wis. 2d 863, 873 n.7, 469 N.W.2d 224 (Ct. App. 1991) (a motion to change a verdict answer "challenges the sufficiency of the evidence to sustain the answer"); *see also* WIS. STAT. § 805.14(1) (2013–14).

> Appellate courts do not upset a jury verdict if there is any credible evidence to support it. "Weighing testimony and evaluating credibility of witnesses are matters for the jury." In reviewing a jury verdict, "evidence will be viewed in the light most favorable to the

verdict" and courts "search for credible evidence that will sustain the verdict, not for evidence to sustain a verdict the jury could have but did not reach."

*Dakter*, 358 Wis. 2d 434, ¶ 18 (citation and one set of quotation marks omitted).

¶ 15. This appeal also involves the interpretation and application of Wisconsin's Lemon Law statute, Wis. Stat. § 218.0171. "Statutory interpretation and the application of a statute to specific facts are questions of law that we review de novo." *Garcia v. Mazda Motor of Am., Inc.*, 2004 WI 93, ¶ 7, 273 Wis. 2d 612, 682 N.W.2d 365. Moreover, "we construe remedial, consumer protection statutes like the Wisconsin Lemon Law 'with a view towards the social problem which the legislature was addressing when enacting the law.' " *Id.*, ¶ 8 (citation omitted). We therefore "liberally construe remedial statutes to suppress the mischief and advance the remedy that the legislature intended to afford." *See id.*

B. *The trial court did not err in denying the Porters' motion for judgment notwithstanding the verdict because Ford's defenses were not prohibited by law.*

¶ 16. With the proper standards of review in mind, we turn to the Porters' argument that the trial court erred in allowing Ford to present defenses that were inconsistent and therefore prohibited by law.

¶ 17. Wisconsin's Lemon Law is a "remedial statute designed to rectify the problem a new car buyer has when that new vehicle is a 'lemon.' " *Berends v. Mack Truck, Inc.*, 2002 WI App 69, ¶ 8, 252 Wis. 2d 371, 643

N.W.2d 158 (citation and quotation marks omitted). The Lemon Law "provides that if a new motor vehicle does not conform to an express warranty and the consumer reports the nonconformity and makes the vehicle available for repair before the expiration of the warranty or one year after delivery of the vehicle, the nonconformity shall be repaired." *See id.*; *see also* WIS. STAT. § 218.0171(2)(a). If the nonconformity is not repaired, the consumer may elect from the various remedies described in § 218.0171(2), including returning the "lemon" in exchange for a comparable replacement vehicle or returning the "lemon" in exchange for a refund. *See, e.g.*, § 218.0171(2)(b)1.-2. "If the manufacturer fails to provide the consumer's specified remedy, the consumer may bring an action to recover damages caused by a [Lemon Law] violation." *Berends*, 252 Wis. 2d 371, ¶ 9. "In other words, it is the manufacturer's failure to comply with a proper notice that gives rise to a violation of the statute and triggers the consumer's right to remedies." *Id.*

■■■

¶ 18. Based on the statutory scheme, a successful Lemon Law claim must prove, first, that the vehicle at issue was a "lemon," and, second, that the manufacturer failed to comply with the law's provisions. *See* WIS. STAT. § 218.0171(1)-(2); *Marquez v. Mercedes-Benz USA, LLC*, 2012 WI 57, ¶ 45, 341 Wis. 2d 119, 815 N.W.2d 314, *clarified on denial of reconsideration*, 2012 WI 74, 342 Wis. 2d 254, 823 N.W.2d 266 ("Remedies beyond a refund or a replacement are . . . not available unless the manufacturer fails to comply with the Lemon Law within the 30–day statutory period after receiving proper notice from the consumer."); *see also Garcia*, 273 Wis. 2d 612, ¶ 20. This is exactly what the verdict form required in the Porters' case. The first

three questions concerned the issue of whether the car was a lemon, *see* § 218.0171(1)-(2)(a), and the fourth question concerned whether Ford complied with the law's mandate that the manufacturer either provide a comparable replacement or a refund for any vehicle determined to be a "lemon," *see* § 218.0171(2)(b).

¶ 19. We therefore disagree with the Porters' contention that Ford, in contesting both aspects of their Lemon Law claim, asserted "inconsistent" defenses. As the trial court explained in its ruling, Ford's defenses "directly correspond[ed] to the two elements that the [Porters] were required to prove in order to recover under the Lemon Law, namely, that (1) their car was a lemon and, (2), Ford failed to provide a comparable replacement vehicle within 30 days after receiving the [Porters'] demand." It was not inconsistent for Ford to defend both elements of the Porters' Lemon Law claim.

¶ 20. The Porters' argument that Ford should have been required to "choose" between defending the various elements of a Lemon Law claim would only make sense if the law allowed them to recover if they could prove *either* that their car was a lemon *or* that Ford failed to provide a comparable replacement. But, as we explained above, that is not how the law works. Rather, the law requires that a plaintiff prove two elements—one, that the car is a lemon, and two, that the manufacturer failed to provide a comparable replacement within the provided timeframe—in order to recover. *See, e.g., Marquez*, 341 Wis. 2d 119, ¶ 45. This is consistent with the purpose of the statute, which is "to protect purchasers of new vehicles that turn out to be defective." *See Garcia*, 273 Wis. 2d 612, ¶ 9. Thus, this was not, as the Porters argue, an instance where

"Ford sought and received . . . a fourth down try for a touchdown (Porters lose their Lemon Law claim and get nothing) but, when it failed to reach the end zone, still be granted a fifth down for a field goal (the replacement vehicle was a comparable new vehicle so the Porters get a vehicle but nothing more)." Rather, this was a case where Ford failed to initially stop the Porters from gaining yards on the field—because the jury found that the car was a "lemon"—but ultimately did prevent them from scoring when the jury found that the replacement vehicle it provided was in fact "comparable."

¶ 21. Because Ford's defenses were not inconsistent, we also reject the Porters' argument that the election of remedies doctrine required Ford to either assert (a) that the car was not a lemon, or (b) that the car was a lemon but that it provided a comparable replacement. The Porters do not cite to any direct authority for their contention that the election of remedies doctrine requires that a manufacturer defending a Lemon Law claim must decide either to assert that the car was not a lemon or to assert that it was a lemon, but that the replacement offered was comparable. For the reasons explained above, such a contention directly contradicts the substance and purpose of the statute. Instead, the Porters cite to *Berends*, which explained that a consumer sending a Lemon Law notice must, pursuant to the statutory scheme, "make a choice and communicate that choice" —*i.e.,* whether to seek a replacement or a refund—"to the manufacturer." *See id.*, 252 Wis. 2d 371, ¶ 11. But *Berends* is inapposite. Just because a consumer is required to choose between a replacement or a refund does not mean that a manufacturer must in turn choose between arguing that a car is not a lemon or

that, even if it is a lemon, that it did provide a comparable replacement for it. We therefore conclude that the election of remedies doctrine—which, as a general matter, safeguards against parties taking inconsistent positions to recover more than they are due—does not apply. *See Bank of Commerce v. Paine, Webber, Jackson & Curtis*, 39 Wis. 2d 30, 36, 158 N.W.2d 350 (1968) (rationale of the election of remedies doctrine is to prohibit parties from affirming "that a given state of facts exists from which they are entitled to a particular relief and afterward affirm or assume that a contrary state of facts exists, from which they are entitled to inconsistent relief") (citation and quotation marks omitted).

¶ 22. In sum, Ford's defenses—first, that the 2010 Escape was not a "lemon," and second, that even if the car was a "lemon" Ford provided a comparable replacement—wholly comported with the substance and purpose of the Lemon Law. Therefore, the trial court did not err in allowing Ford to assert its defenses, and did not err in denying the Porters' motion.

*C. The trial court did not err in denying the Porters' motion to change the answer or strike the answer to Question 4 of the Lemon Law verdict form.*

¶ 23. We turn next to the Porters' argument that Question 4 should have been stricken from the verdict because it "was a surplus question that was irrelevant under the law." According to the Porters, once the jury determined that the 2010 Escape was a "lemon," the Porters should have won their Lemon Law claim and should have been entitled to the remedies allowed under Wis. Stat. § 218.0171(7). *See id.* (allowing,

among other things, double damages, costs, and attorney fees to consumers who prevail at trial). In other words, the Porters argue that they did not, as a matter of law, need to show that Ford failed to provide them with a comparable replacement vehicle in order to prove their Lemon Law claim.

¶ 24. The Porters are wrong. As we explained more fully above, it is clear from the statutory scheme that proving that a manufacturer failed to comply with the refund or replacement requirement is a necessary requirement of a successful Lemon Law claim. *See* Wis. Stat. § 218.0171(2); *Marquez*, 341 Wis. 2d 119, ¶ 45. Indeed, requiring a manufacturer to rectify the problem when a consumer buys a lemon is the purpose of the Lemon Law claim. As the supreme court pointed out in *Marquez*, the goal is to provide consumers who have purchased a "lemon" with a remedy without requiring them to resort to litigation:

> When a consumer establishes that he or she is stuck with a lemon and provides notice and an offer of title to the manufacturer, the legislature intends the consumer to receive a refund or replacement promptly, without resorting to litigation. The Wisconsin Lemon Law squarely places the burden on the manufacturer to provide a refund within the 30–day statutory period. By imposing this burden on the manufacturer, by imposing a strict 30–day time limit, and by providing exacting statutory remedies for a violation, the legislature intended to encourage cooperation from manufacturers and to make the prospect of litigation unattractive to manufacturers.

*See id.*, 341 Wis. 2d 119, ¶ 31.

¶ 25. Additionally, as noted in *Marquez*, the Lemon Law was not created to punish manufacturers, but to get consumers back on the road in quality cars. *See id.*, ¶ 29 ("The principle motivation for the exacting remedies in the Wisconsin Lemon Law . . . is not to punish the manufacturer because a lemon escaped from the plant. Rather, the principle motivation for the remedies is 'to provide an incentive to . . . promptly return those unfortunate consumers back to where they thought they were when they first purchased that new automobile.' ") (citation and footnote omitted). If we were to follow the Porters' reading of the law, we would be punishing manufacturers for producing "lemons" without incentivizing them to solve the problem. Such a reading is contrary to the substance and purpose of the statute.[6]

---

[6] We further note that the Porters' argument that Question 4 was superfluous belies their complaint, which alleges that Ford failed or refused to provide proper relief in a timely manner. The trial court pointed this out in its oral ruling denying the Porters' motions:

> If plaintiffs could prevail on their Lemon Law claim merely by establishing their vehicle was a lemon, then why did they separately allege that Ford failed or refused to provide the appropriate relief provided for by the Lemon Law sought by the plaintiffs in a timely manner, as set forth in the plaintiffs' complaint[?]

> Moreover, the Wisconsin Supreme Court has stated "remedies beyond a refund or a replacement are still not available unless the manufacturer fails to comply with the Lemon Law within the 30–day statutory period after receiving proper notice from the consumer." That's the *Marquez* case at paragraph 45.

> For all of these reasons, it is incomprehensible how the plaintiffs can genuinely argue that they're entitled to damages under the Lemon Law regardless of whether or not Ford satisfied their demand for a comparable new vehicle."

¶ 26. Therefore, because Question 4 concerned a necessary element of the Porters' Lemon Law claim, the trial court did not err in denying the Porters' motion to strike the answer or grant judgment notwithstanding the verdict.

*By the Court.*—Order affirmed.