IN the INTEREST OF C.R.:
S. O., Petitioner-Respondent,

v.

T. R., Respondent-Appellant.

Court of Appeals

*Nos. 2015AP548, 2015AP549. Submitted on briefs
December 1, 2015.—Decided February 17, 2016.*

2016 WI App 24

(Also reported in 877 N.W.2d 408.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Paulette A. Brazil* of *Brazil & Benske, LLC*, Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Robert N. Meyeroff* of *Robert N. Meyeroff, S.C.*, Milwaukee.

Before Curley, P.J., Kessler and Brennan, JJ.

¶ 1. CURLEY, P.J.   Todd appeals from the trial court's orders granting child abuse injunctions against him as to his two minor children, Adam and Kyle, after their mother (Todd's ex-wife), Susan, filed petitions

pursuant to Wis. Stat. § 813.122 (2013–14)[1] alleging that Todd had abused them.[2] On appeal, Todd argues that the trial court: (1) improperly raised legal issues that were waived due to the issues not having been argued at trial or in Todd's prior appeal; (2) that the trial court improperly engaged in statutory interpretation of Wis. Stat. § 48.02(1)(gm) because the statute is unambiguous; and (3) that even if § 48.02(1)(gm) is deemed ambiguous, the trial court's interpretation was incorrect and should be reversed. We disagree and affirm.

## BACKGROUND

¶ 2.   This case is before this court for the second time and involves child abuse injunctions ("CAIs") entered against Todd as to his two minor children, Adam and Kyle, pursuant to Wis. Stat. § 813.122.

¶ 3.   This matter began when Susan filed petitions seeking CAIs against Todd for Adam and Kyle on February 14, 2013.[3] The petition filed in Adam's case alleged that Adam had recently been the victim of

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

[2] The parties and the children have been assigned pseudonyms in accordance with Wis. Stat. Rule § 809.19(1)(g). We consolidated these appeals for the purpose of disposition in an order dated April 23, 2015, as the order appealed from is the same in both cases. The Honorable M. Joseph Donald presided over the initial hearing and the trial; he issued the child abuse injunctions against Todd as to Adam and Kyle, which Todd appealed in his prior appeal. The Honorable Mary E. Triggiano presided over this matter upon remand from this court and entered the orders now on appeal.

[3] Although the petitions are date stamped February 14, 2013, the CCAP record filed in Kyle's case states that the petitions were filed on February 15, 2013.

mental/emotional abuse from witnessing Todd physically and verbally abusing Kyle, who is Adam's younger brother. The petition further alleged that Adam was verbally abused and that Todd had pulled his hair, pushed him, yelled at him, embarrassed him, and intimidated him when he was younger, as well as that he had been spanked in the past and that he most recently had suffered blows to the head. The petition filed in Kyle's case alleged that Kyle had recently complained that his head hurt after returning from Todd's house, that Todd recently hit Kyle on the head when Todd became angry with Kyle about his homework, and that Adam had an audio recording of the incident on his phone. The petition in Kyle's case further stated that an Oak Creek police officer listened to the recording and thereafter called Child Protective Services.

¶ 4.    A Temporary Restraining Order and Notice of Injunction Hearing ("TRO") was issued on February 14, 2013, in each case, and the injunction hearing was set for February 28, 2013.[4] By agreement of the parties, the injunction hearing was later rescheduled for March 5, 2013, at which time the parties appeared before the court. After discussing the matter with the parties, some of which occurred off the record, the parties voluntarily requested that the court adjourn the injunction hearing for a period of approximately ninety days in the hopes that they could resolve the issues on their own. The parties thereafter entered a written agreement to that effect, and the injunction hearing was adjourned to May 31, 2013.

---

[4] The Temporary Restraining Order and Notice of Injunction Hearing is date-stamped February 14, 2013, in each case. Again, however, the CCAP entry filed in Kyle's case lists the date as February 15, 2013.

¶ 5. When the parties appeared for the adjourned injunction hearing on May 31, 2013, they informed the trial court that they had been unable to reach a satisfactory resolution and that it would be necessary to move forward with the injunction hearing.

¶ 6. Multiple parties, including Adam, Todd, Adam's and Kyle's therapist, and Todd's therapist, testified at the injunction hearing. The trial court heard considerable testimony as to Adam's and Kyle's relationship with Todd, their fear of Todd, the alleged verbal and physical abuse that Todd subjected Adam and Kyle to, and the therapy that Adam and Kyle had been receiving. The trial court also heard testimony from Todd regarding his desire to improve his parenting skills and relationship with Adam and Kyle, as well as testimony regarding the therapy sessions and parenting classes that Todd had begun participating in after the filing of the petitions.

¶ 7. At the conclusion of the hearing, the court found that grounds for the injunctions existed under WIS. STAT. § 813.122 based on its finding that Adam and Kyle had suffered emotional damage. Specifically, the court stated that it was "satisfied that there is a great deal of fear and anxiety" and that it was "satisfied to reasonable grounds to believe that the respondent did in fact engage in conduct that created a great deal of anxiety and fear in [Adam and Kyle]." The court thereafter entered the injunctions for a period of ninety days, running from May 31 to August 31, 2013.

¶ 8. Todd appealed that decision, *S.O. v. T.R.*, Nos. 2013AP2242/2243, unpublished op. and order (WI App July 14, 2014), and argued that the injunctions should be reversed because the evidence was

insufficient to support the trial court's finding that Adam and Kyle had suffered emotional damage and that the trial court had failed to make the required finding that Todd had neglected or refused to obtain treatment for Adam and Kyle as required by Wis. Stat. § 48.02(1)(gm).[5]

¶ 9. In the earlier appeal, we determined that the issuance of an injunction on the ground of emotional damage required a finding that the children were: (1) exhibiting one or more characteristics of emotional damage to a severe degree, *see* Wis. Stat. §§ 48.02(1)(gm) and 48.02(5j); *and* (2) that the respondent had neglected or refused to obtain treatment or take other steps to ameliorate those symptoms, *see* Wis. Stat. § 48.02(1)(gm). *S.O.*, Nos. 2013AP2242/2243, unpublished op. and order at 3. While we concluded that the trial court's conclusion that Adam and Kyle suffered from fear and anxiety was not clearly erroneous, we agreed with Todd that the trial court had not made a finding as to whether Todd had neglected or refused to obtain treatment for Adam's and Kyle's symptoms of emotional damage. *Id.* at 2, 5. We therefore reversed and remanded the matter to the trial court and directed that court to determine whether Todd had neglected, refused, or was otherwise unable to obtain the necessary treatment or take steps to ameliorate Adam's and Kyle's symptoms. *Id.* at 5.

¶ 10. On remand, the trial court determined that in order to answer that question, it needed to

---

[5] Prior to his earlier appeal, Todd filed a motion to reconsider, which the trial court denied at a hearing on August 20, 2013. The trial court also denied Susan's motion to extend the injunctions for ten days pending an upcoming placement hearing in family court at that hearing.

first determine which time period it should consider —the time period leading up to the filing of the CAI petitions or the time period leading up to the injunction hearing—when reviewing the evidence presented as to whether Todd had failed or refused to obtain treatment or otherwise undertake steps to ameliorate Adam's and Kyle's symptoms. Finding no guidance in the Wisconsin Statutes or Wisconsin case law, the trial court concluded WIS. STAT. § 813.122 was ambiguous.

¶ 11. Based on its review of multiple subsections of WIS. STAT. § 813.122, the trial court concluded that only evidence of the steps the respondent made to obtain treatment or otherwise ameliorate the children's symptoms leading up to the filing of the petition should be considered when determining whether to grant a CAI. Specifically, the trial court considered that an injunctive relief hearing must be held within fourteen days after a petition is filed, *see* § 813.122(4)(c), and contemplated that in light of that short timeframe, a respondent would be unable to meaningfully obtain treatment or take other steps to ameliorate a child's symptoms in a way that would have a significant impact.

¶ 12. The trial court also looked to the plain language of the statute, which requires that a petition set forth facts showing that the respondent "engaged in" abuse or that the respondent may engage in abuse based on the respondent's "prior conduct." *See* WIS. STAT. § 813.122(6)(a)3. The court concluded that the use of the past tense "engaged in" and the reference to "prior conduct" suggested that only facts leading up to the filing of the CAI petition should be considered. Finally, the trial court considered the common sense meaning of the statute and concluded

that because a respondent can only be required to respond to the facts alleged in the petition, only the facts as they existed at the time the petition was filed should be considered when determining whether to grant a CAI.

¶ 13.  After determining that the time frame of evidence to consider for the purpose of determining whether Todd had neglected, refused, or was otherwise unable to obtain necessary treatment or take steps to ameliorate Adam's and Kyle's symptoms was limited to facts as of February 14, 2013—the date Susan filed the petitions—the trial court, in a very thorough written decision, concluded that Susan had established, and the evidence adduced at the injunction hearing supported, that Todd had neglected, refused, or was unable for reasons other than poverty to obtain treatment or take steps to ameliorate Adam's and Kyle's symptoms of emotional damage. The trial court thereafter issued orders reinstating the injunctions for a ninety-day period running from May 31, 2013, through August 31, 2013. Those orders are at issue on appeal.[6]

_____

[6] We note that the trial court reinstated the injunctions for the ninety-day period running from May 31, 2013, through August 31, 2013. That time period has long-since passed, and although the parties do not raise the issue, we question whether this issue is moot. *See State ex rel. Milwaukee Cty. Pers. Review Bd. v. Clarke*, 2006 WI App 186, ¶ 28, 296 Wis. 2d 210, 723 N.W.2d 141 (" 'An issue is moot when its resolution will have no practical effect on the underlying controversy.' ") (Citation omitted.) Appellate courts generally do not consider issues that are moot. *Id.*, ¶ 31. Nevertheless, for the purpose of these appeals we assume, without deciding, that even if this issue is moot, it is appropriate to address the issues raised in these appeals because they raise an issue of great public importance, a decision is necessary to guide trial courts in

## ANALYSIS

¶ 14.   On appeal, Todd first argues that the trial court improperly raised two legal issues that he concludes were waived because they were not argued at trial or in his earlier appeal. Specifically, he argues that the trial court improperly raised the following issues:   (1) whether evidence pertaining to a parent's inability to "obtain the necessary treatment or to take steps to ameliorate the symptoms" of abuse, *see* WIS. STAT. § 48.02(1)(gm), should be limited to pre-petition evidence or whether evidence arising after the issuance of a temporary injunction but before the injunction hearing should also be considered; and (2) whether his efforts to improve himself for the benefit of his children should be considered in evaluating whether the parent took steps to ameliorate harm, *see* § 48.02(1)(gm). Todd also argues that the trial court improperly engaged in statutory interpretation of § 48.02(1)(gm) because the statute is unambiguous and that even if § 48.02(1)(gm) is deemed ambiguous, the trial court's interpretation was incorrect and should be reversed.[7]

future child abuse injunction cases, and, that given the maximum two-year period of time that a child abuse injunction may be issued, this issue is likely to arise in the future but may evade review prior to resolution of the appellate process. *See id.* (appellate court may address a moot issue under certain circumstances).

[7] Todd's brief questions whether the trial court properly determined that WIS. STAT. § 48.02(1)(gm) is ambiguous and whether the trial court's statutory interpretation of that statute was proper, whereas the trial court, in its written decision, referred to the ambiguity in and its interpretation of WIS. STAT. § 813.122. We refer to both statutes in our discussion, as WIS. STAT. § 813.122(1)(a) incorporates WIS. STAT. § 48.02(1)(gm) by reference.

## I. Standard of Review

¶ 15.   Our review in this matter requires a combination of discretionary and *de novo* review because we review both the trial court's factual findings and the trial court's statutory interpretation and application of law. We will not set aside a trial court's factual findings unless the findings are clearly erroneous. *See* WIS. STAT. § 805.17(2); *see also M.Q. v. Z.Q.*, 152 Wis. 2d 701, 708, 449 N.W.2d 75 (Ct. App. 1989). When reviewing the trial court's factual findings, we will "search the record for evidence to support findings reached by the trial court, not for evidence to support findings the trial court could have reached but did not." *Noble v. Noble*, 2005 WI App 227, ¶ 15, 287 Wis. 2d 699, 706 N.W.2d 166. However, " '[s]tatutory interpretation and the application of a statute to specific facts are questions of law that we review *de novo.*' " *Porter v. Ford Motor Co.*, 2015 WI App 39, ¶ 15, 362 Wis. 2d 505, 865 N.W.2d 207 (citation omitted; emphasis added).

¶ 16.   "The purpose of statutory interpretation is to give full effect to the policy choices of the legislature." *Glidewell v. Glidewell*, 2015 WI App 64, ¶ 14, 364 Wis. 2d 588, 869 N.W.2d 796. To that end, we begin by examining the language of the statute to ascertain its plain meaning. *See State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. We give words and phrases their "common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.*, ¶ 45. "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part

of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably to avoid absurd or unreasonable results." *Id.*, ¶ 46. We read statutes in a manner that gives reasonable effect to every word, in order to avoid surplusage. *See id.* " 'If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning.' " *Id.* (citation omitted). "Where statutory language is unambiguous, there is no need to consult extrinsic sources of interpretation, such as legislative history." *Id.*

¶ 17.  A statute is ambiguous only if reasonably well-informed persons could interpret its meaning in two or more senses. *Id.*, ¶ 47. A statute is not ambiguous simply because there is a disagreement as to its meaning; rather "the test for ambiguity examines the language of the statute 'to determine whether well-informed persons *should have* become confused, that is, whether the statutory . . . language *reasonably* gives rise to different meanings.' " *Id.* (emphasis and ellipses in original; citations and one set of quotation marks omitted). " 'Statutory interpretation involves the ascertainment of meaning, not a search for ambiguity.' " *Id.* (citation omitted). Where a statute is ambiguous, courts may consult extrinsic sources of interpretation such as legislative history. *See id.*, ¶¶ 48–50.

¶ 18.  With these standards in mind, we turn to Todd's argument that the trial court improperly engaged in statutory interpretation because WIS. STAT. § 48.02(1)(gm) is unambiguous, as our resolution of this issue also addresses Todd's waiver argument.

*II. WISCONSIN STAT. §§ 48.02(1)(gm) and 813.122 are silent both as to the relevant evidentiary time period and as to the scope of evidence that may be considered and are therefore ambiguous.*

■

¶ 19. WISCONSIN STAT. § 813.122 governs child abuse restraining orders and injunctions and provides that a court may grant an injunction prohibiting the respondent from contact with the child victim if the court concludes that certain conditions are met. *See* WIS. STAT. § 813.122(5)(a)1.–3. For the purpose of this appeal, we focus on the third requirement, that "[a]fter hearing, the judge finds reasonable grounds to believe that the respondent has engaged in, or based upon prior conduct of the child victim and the respondent may engage in, abuse of the child victim." *See* WIS. STAT. § 813.122(5)(a)3. WISCONSIN STAT. § 813.122(1)(a) adopts the definition of abuse set forth in WIS. STAT. § 48.01(1)(a) and (b) to (gm). This appeal requires consideration of the definition of abuse set forth in WIS. STAT. § 48.02(1)(gm), which defines "abuse" as including "[e]motional damage for which the child's parent, guardian or legal custodian has neglected, refused or been unable for reasons other than poverty to obtain the necessary treatment or to take steps to ameliorate the symptoms."

¶ 20. In *S.O.*, we looked to the statutory language quoted above and explained that in order to grant an injunction on the ground of emotional damage, the trial court was required to find: (1) that Adam and Kyle exhibited one or more characteristics of emotional damage to a severe degree;[8] *and* (2) that

[8] WISCONSIN STAT. § 48.02(5j) defines "[e]motional damage":

683

Todd had neglected or refused to obtain treatment or take other steps to ameliorate those symptoms. *S.O.*, Nos. 2013AP2242/2243 unpublished op. and order at 3. Because the trial court failed to make a finding as to whether Todd had neglected or refused to obtain treatment for Adam and Kyle, we reversed and remanded with instructions to the trial court to determine whether Todd had neglected or refused to obtain treatment for Adam's and Kyle's symptoms. *Id.* at 5.

¶ 21. Despite requiring that a trial court find that the child victim's "parent, guardian or legal custodian has neglected, refused or been unable for reasons other than poverty to obtain the necessary treatment or to take steps to ameliorate the symptoms" before it can issue an injunction, *see* WIS. STAT. §§ 48.02(1)(gm) and 813.122(5)(a), neither section identifies the relevant time period for evaluating such evidence. Is evidence of the treatment obtained or the ameliorating steps taken limited to evidence as of the date the petition for the CAI was filed? Or instead, can a trial court consider evidence of such actions leading

"Emotional damage" means harm to a child's psychological or intellectual functioning. "Emotional damage" shall be evidenced by one or more of the following characteristics exhibited to a severe degree: anxiety; depression; withdrawal; outward aggressive behavior; or a substantial and observable change in behavior, emotional response or cognition that is not within the normal range for the child's age and stage of development.

We concluded in *S.O. v. T.R.*, Nos. 2013AP2242/2243, unpublished op. and order (WI App July 14, 2014), that the trial court's determination that Adam and Kyle suffered from fear and anxiety was not clearly erroneous, and whether there was sufficient evidence establishing that Adam and Kyle suffered from emotional damage is therefore not at issue in this appeal.

up to the date of the injunction hearing? Without any direction in the statutes, both options are reasonably plausible.

¶ 22. That is not the only ambiguity, however, as WIS. STAT. §§ 48.02(1)(gm) and 813.122 also fail to identify whether evidence of the treatment obtained or the steps taken to ameliorate the child's symptoms is limited to treatment or steps taken for the child specifically—such as obtaining therapy for the child—or whether a trial court may also consider certain evidence of treatment that the parent, guardian, or legal custodian has obtained or the steps he or she has taken on his or her own behalf—such as enrolling in parenting classes or working with a therapist to improve parenting skills —that benefits the child. Both possibilities are reasonably plausible.

¶ 23. The trial court correctly recognized the lack of statutory guidance on these two issues on remand, which resulted in the trial court's conclusion that it was necessary to rely upon the "broader statutory interpretation of WIS. STAT. § 813.122(4)(c) and case law discussing the Children's Code" to determine the relevant time period for establishing a factual basis for issuing a CAI. As outlined in this section, we agree with the trial court's conclusion that § 813.122(4)(c) is silent as to the appropriate timeframe for evaluating whether the parent, guardian, or legal custodian obtained treatment or otherwise took steps to ameliorate the child's symptoms, and it is also silent as to whether the treatment or other ameliorating steps must have been obtained specifically for the child. WISCONSIN STAT. § 48.02(1)(gm) is similarly silent as to these questions. Accordingly, because multiple reasonable interpreta-

tions exist, we must engage in statutory interpretation to answer these important questions.

¶ 24.  Having concluded that statutory interpretation is necessary, we briefly pause our discussion to address Todd's concern that the trial court "improperly raised legal issues never argued at trial or during the initial appeal" and that these issues were therefore waived. The two issues Todd identifies are the exact ambiguities we just described:  (1) the appropriate timeframe for evidence regarding whether Todd had or had not taken steps to obtain treatment or to ameliorate Adam's and Kyle's symptoms of emotional damage; and (2) whether the treatment includes treatment Todd obtained for himself. Todd argues that "the trial court determined [these] two issues needed to be resolved before moving to the issue on remand."

¶ 25.  As we have explained, Wis. Stat. §§ 48.02(1)(gm) and 813.122 are silent as to the issues Todd argues have been waived, and as we have also explained, it is apparent that in order to determine upon remand whether Todd had "neglected, refused or been unable for reasons other than poverty to obtain the necessary treatment or to take steps to ameliorate the symptoms," *see* Wis. Stat. § 48.02(1)(gm), the trial court was first required to resolve these questions. Thus, contrary to Todd's belief, these were not issues that had been waived; rather, these were questions that arose from the ambiguities highlighted above and that were necessarily addressed in the course of the trial court's statutory interpretation.

*III. Whether a respondent "has neglected, refused or been unable for reasons other than poverty to obtain the necessary treatment or to take steps to ameliorate the symptoms" of emotional abuse must be determined as of the time the petition was filed, and evidence is not limited to treatment obtained for or steps taken directly for the child.*

¶ 26. Having determined that neither WIS. STAT. § 48.02(1)(gm) nor § 813.122 provide guidance as to either the appropriate time frame or scope of evidence to consider in the context of a child abuse injunction issued on the basis of emotional damage, we now turn to the well-established principles of statutory interpretation, which are set forth in detail in Section I. In doing so, we remain mindful that "[t]he purpose of statutory interpretation is to discern the intent of the legislature," *State v. Gregory L.S.*, 2002 WI App 101, ¶ 30, 253 Wis. 2d 563, 643 N.W.2d 890, and that we must "consider the context in which words appear, the structure of the statute, and the purpose of the statute where it is evident from the statutory text," *Teschendorf v. State Farm Ins. Cos.*, 2006 WI 89, ¶ 12, 293 Wis. 2d 123, 717 N.W.2d 258.

*A. Only pre-petition evidence may be considered for the purpose of determining whether grounds exist for issuance of a child abuse injunction.*

¶ 27. We begin by addressing the question of the proper time period for relevant evidence of the treatment a respondent has obtained or the steps a respondent has taken to ameliorate a child's symptoms of

687

emotional damage. Todd argues that because neither Wis. Stat. § 813.122 nor Wis. Stat. § 48.02(1)(gm) include language "providing for an exclusion of evidence regarding ameliorative steps after the issuance of a temporary injunction and prior to the contested hearing," there is no limitation as to the evidence a court may consider at a child abuse injunction hearing. We previously rejected a similar argument in *Gregory L.S.*

¶ 28. In *Gregory L.S.*, the trial court entered orders adjudging Gregory's children as being in need of protection or services. *Id.* ¶ 1. Gregory appealed and argued that his children were no longer in such need because his children were living with him and not with his ex-wife, who they had been living with when the petitions were filed. *Id.*, ¶¶ 1–2. As such, Gregory argued that the court should have considered the conditions as of the date of the fact-finding hearing— when his children were living with him—rather than as of the date the petitions were filed. *See id.*, ¶ 4. We rejected that argument, noting that determining whether a child was in need of protection and services as of the date of the fact-finding hearing rather than as of the date the petition was filed "would allow the court's jurisdiction over the child to change daily, depending on the circumstances in the home on a particular day." *See id.* However, we also concluded that it was proper to consider changes that occurred after a petition was filed during the dispositional stage of a Child in Need of Protection or Services ("CHIPS") proceeding. *See id.*

¶ 29. That *Gregory L.S.* is a CHIPS case under Wis. Stat. ch. 48 (1999–2000) does not render its reasoning inapplicable to the evidence that may be considered in a child abuse injunction matter filed under Wis. Stat. § 813.122. To the contrary, *Gregory*

*L.S.* is particularly instructive, as the purpose of Wis. Stat. § 813.122—protecting an allegedly abused child by separating the child from the alleged abuser— aligns with Wis. Stat. ch. 48's purpose of protecting children, *see* Wis. Stat. § 48.01. Moreover, Wis. Stat. § 813.122 incorporates Wis. Stat. ch. 48 by reference in numerous places, suggesting, at the very least, that the statutes are related and should therefore be similarly construed. *See, e.g.,* Wis. Stat. § 813.122(1)(a), (3)(b), and (6)(b).

¶ 30.   Our review of Wis. Stat. §§ 48.02(1)(gm) and 813.122 confirms that the rationale limiting evidence to pre-petition evidence in CHIPS cases, as set forth in *Gregory L.S.*, is equally applicable in the case of child abuse injunctions filed under Wis. Stat. § 813.122. We reach this conclusion based on our review of Wis. Stat. § 813.122 as a whole.

¶ 31.   We first note that Wis. Stat. § 813.122(4)(c) requires a trial court to hold the hearing for injunctive relief within fourteen days after the issuance of a temporary restraining order. The only exceptions to this fourteen-day time limit are if the parties otherwise request an extension in writing, if the court needs to extend the temporary restraining order for an additional fourteen days to effectuate service, or in certain circumstances where a judicial substitution is filed. *See* § 813.122(4)(c).

¶ 32.   We find this statutorily mandated fourteen-day time period significant, as it suggests that immediately separating the child from the alleged abuser is of great importance. The fourteen day maximum period also suggests that swift judicial resolution of whether grounds exist for issuing a child abuse injunction is also of great importance. However, this swift resolution, coupled with the strong emphasis on treat-

ment of a child's symptoms of emotional damage, indicates that only pre-petition evidence may be introduced at the injunction hearing.

¶ 33. It is without question that where a child has allegedly suffered from emotional abuse, treatment of the child's symptoms of emotional damage is of paramount importance because it is necessary to establish that a respondent has "neglected, refused or been unable for reasons other than poverty to obtain the necessary treatment or to take steps to ameliorate the symptoms" prior to finding grounds to issue an injunction based on emotional abuse. *See* WIS. STAT. §§ 48.02(1)(gm) and 813.122(5)(a)3. However, because resolution of whether an injunction should be issued must be accomplished within fourteen days, this leaves little opportunity for meaningful treatment of a child's symptoms of emotional damage. Accordingly, because a respondent's failure to obtain treatment for or to take steps to ameliorate a child victim's symptoms of emotional damage is a required element for the issuance of a child abuse injunction, it would be unreasonable to construe these statutes as allowing a respondent to introduce evidence of obtaining such treatment or of taking such steps during that short fourteen-day period.

¶ 34. We also note that allowing a respondent to introduce evidence of treatment obtained or steps taken to ameliorate a child's symptoms of emotional damage during the, at most, fourteen-day period between the filing of the petition and the injunction hearing would allow the respondent an opportunity to make quick and non-permanent changes that could defeat the petition. Because treatment of a child's symptoms of emotional damage is of paramount importance in the context of a child abuse injunction, *see* WIS.

STAT. §§ 48.02(1)(gm) and 813.122, allowing an opportunity for a respondent to defeat an injunction petition with non-permanent and non-meaningful treatment would be unreasonable.

¶ 35. We also consider the common sense meaning of WIS. STAT. §§ 48.02(1)(gm) and 813.122 to avoid unreasonable results. WISCONSIN STAT. § 813.122(2) is instructive. When a child abuse injunction petition is filed, the respondent may "respond to the petition" either before or at the injunction hearing. *See* WIS. STAT. § 813.122(2). Thus, the respondent can respond only to facts that actually existed at the time the petition was filed because a petition can only include facts already in existence. To allow a respondent to respond to the petition with additional facts that arose after the filing of the petition would be unreasonable, as the purpose of the injunction hearing is to determine whether grounds exist for issuing an injunction based on the respondent's prior conduct. *See* WIS. STAT. § 813.122(5)(a)3.[9]

¶ 36. Moreover, if a respondent chooses to respond to a petition in writing prior to the injunction hearing, additional conduct may arise during the period after the respondent responds to the petition in writing but before the injunction hearing is held. This would then raise the question of whether a court may consider evidence arising between the filing of the petition and the respondent's written response or

---

[9] We recognize that at the time of the injunction hearing, the respondent's conduct between the filing of the petition and the injunction hearing is, technically speaking, prior conduct. However, the petition must include allegations of prior abusive conduct, *see* WIS. STAT. § 813.122(6)(a)3., making it clear that the prior conduct the trial court must focus on is the respondent's conduct prior to the filing of the petition.

691

whether the court may consider evidence arising between the respondent's written response and the hearing. Thus, construing WIS. STAT. §§ 48.02(1)(gm) and 813.122 as allowing for the introduction of evidence arising after the filing of the petition but before the injunction hearing could be broken into smaller time segments based upon whether—and when—a respondent chooses to respond to a petition in writing. Such a construction is not only unreasonable—it is also unworkable.

¶ 37. Further bolstering our conclusion that only pre-petition evidence may be introduced for the purpose of determining whether grounds exist to issue an injunction is the past-tense used in WIS. STAT. § 813.122(6)(a)3.: the petition must allege "[t]hat the respondent *engaged in,* or *based on prior conduct* of the respondent and the child victim may engage in, abuse of the child victim." (Emphasis added.) This use of past-tense language necessarily anticipates placing the burden on the petitioner to establish facts that have already occurred in order to prevail in obtaining the injunction. Significantly, in order to do so, the petitioner must establish that the respondent has "*neglected, refused,* or *been unable . . . to obtain* the necessary treatment or to take steps to ameliorate the [child's] symptoms," *see* WIS. STAT. §§ 48.02(1)(gm) and 813.122(5)(a)3., which depends upon facts existing at the time the petition was filed.

¶ 38. Moreover, as explained above, construing WIS. STAT. §§ 48.02(1)(gm) and 813.122 as allowing a trial court to consider evidence of the treatment a respondent obtained or steps a respondent took to ameliorate a child's symptoms of emotional damage *after* the filing of the petition but prior to the injunction hearing would undercut the purpose of the injunction,

692

which is to protect a child from an abusive situation. In light of Wisconsin's strong and long-standing interest in the protection and well-being of its minors, *see, e.g., State v. Killory,* 73 Wis. 2d 400, 407, 243 N.W.2d 475 (1976) ("[t]he state has the right to enact reasonable legislation to protect the safety and well-being of minors"), we conclude that interpreting these statutes in a manner that would allow a respondent to undercut the purpose of the statute would be unreasonable.

¶ 39. Accordingly, we conclude that for the purpose of determining whether grounds exist to issue a child abuse injunction pursuant to WIS. STAT. § 813.122, a trial court may consider only pre-petition evidence.

¶ 40. However, our conclusion that a trial court may only consider pre-petition evidence when determining whether a CAI should be issued pursuant to WIS. STAT. § 813.122 does not mean that post-filing evidence cannot be introduced. Rather, post-filing evidence regarding treatment obtained or steps taken to ameliorate the child's symptoms may be considered for the purpose of determining the type and extent of any visitation between the parent and child if the trial court issues the injunction. We reach this conclusion based on WIS. STAT. § 813.122(5)(b), which states that when the court does issue an injunction, if the respondent is the child's parent, the court "shall modify the order [for a child abuse injunction] to provide the parent reasonable visitation rights, unless the [court] finds that visitation would endanger the child's physical, mental or emotional health." § 813.122(5)(b). This process is analogous to a trial court's ability to consider post-petition evidence during the dispositional hearing stage of a CHIPS case. *See Gregory L.S.,* 253 Wis. 2d 563, ¶¶ 4, 40 (post-petition changes in a child's cir-

cumstances should be considered at the dispositional hearing). Accordingly, because we read § 813.122(5)(b) as allowing post-petition evidence to be introduced and considered for the purpose of determining a parent's visitation rights even if an injunction is issued, we are not persuaded by Todd's argument that reading WIS. STAT. §§ 48.02(1)(gm) and 813.122 in the way we have described would lead to an absurd result.

    *B.*   *Evidence of treatment obtained or steps taken to ameliorate a child's symptoms is not limited to evidence of treatment obtained or steps taken specifically for the child.*

¶ 41.  Having determined that only evidence of pre-filing treatment obtained and ameliorative steps taken may be considered for the purpose of determining whether grounds exist for issuing a CAI, we turn now to the question of whether such pre-petition evidence is limited to treatment obtained for the child or steps taken to ameliorate the child's symptoms directly or whether evidence of steps the parent has taken on the parent's behalf *for the benefit of the child* may also be considered.

¶ 42.  It appears that the trial court concluded that only efforts made with respect to the child directly or treatment obtained specifically for the child may be considered. We do not believe the statute, which requires a trial court to consider whether the parent has "neglected, refused or has been unable . . . to obtain the necessary treatment or to take steps to ameliorate the [child's] symptoms" of emotional damage, *see* WIS. STAT. § 48.02(1)(gm), should be read so narrowly.

¶ 43.  There is no doubt that for the purpose of determining whether or not a CAI should be issued,

694

WIS. STAT. § 48.02(1)(gm) requires that the treatment obtained, or the steps taken to ameliorate the *child's symptoms* are for the *child's* benefit. We recognize, however, that the steps a parent takes to improve the parent's parenting skills and relationship with the child may very well benefit the child and, importantly, may play a role in ameliorating the child's symptoms of emotional damage. Accordingly, we conclude that evidence of the treatment obtained or steps taken by a parent, guardian, or legal custodian to address and remedy his or her actions can benefit the child within the meaning of WIS. STAT. §§ 48.02(1)(gm) and 813.122. However, where evidence of such actions is introduced to establish that the parent, guardian, or legal custodian has *not* "neglected, refused or been unable . . . to obtain the necessary treatment or to take steps to ameliorate the symptoms," *see* § 48.02(1)(gm), there must also be testimony or other evidence showing an actual benefit *to the child* in terms of treating the child and ameliorating the child's symptoms of emotional abuse.

IV. *The trial court's factual findings were not clearly erroneous, and the trial court properly applied the law to its findings.*

¶ 44. Having resolved the ambiguity in WIS. STAT. §§ 48.02(1)(gm) and 813.122, we now look to the trial court's factual findings and application of law. We will only set aside the trial court's factual findings if those findings are clearly erroneous, *see* WIS. STAT. § 805.17(2), and we will search the record for evidence that supports the trial court's conclusion, *see Noble*, 287 Wis. 2d 699, ¶ 15. We will review the trial court's application of law *de novo. See id.*

¶ 45. After reviewing and considering the record and testimony presented at the injunction hearing, the trial court found that Todd had not obtained treatment or taken steps to ameliorate Adam's and Kyle's symptoms *prior to* the filing of the CAI petitions. This finding was not clearly erroneous, as the record confirms that the only evidence presented as to the steps Todd took to obtain treatment or to otherwise ameliorate their symptoms occurred *after* the petitions were filed, and we therefore will not overturn the trial court's findings. Based on our conclusion that only evidence of pre-petition ameliorative steps may be considered for the purpose of determining whether an injunction may be issued, however, we need not consider whether the treatment Todd obtained for himself —attending therapy sessions and parenting classes— satisfies the statutory requirements in this case, as there is no dispute that he took those steps only after the petitions were filed.

¶ 46. We also conclude that the trial court properly applied the law to its factual findings in excluding evidence pertaining to the steps Todd took to ameliorate Adam's and Kyle's symptoms after the filing of the petitions for the purpose of determining whether Todd had "neglected, refused or been unable . . . to obtain the necessary treatment or to take steps to ameliorate [Adam's and Kyle's] symptoms." *See* WIS. STAT. § 48.02(1)(gm). Accordingly, we will not disturb the trial court's conclusion that there were reasonable grounds for issuing the injunctions pursuant to WIS. STAT. § 813.122.

*By the Court.*—Orders affirmed.