COURT OF APPEALS
DECISION
DATED AND FILED

November 11, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2024AP1025**
**2024AP1026**

Cir. Ct. Nos. **2023CV372**
**2023CV373**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT III**

---

IN THE INTEREST OF **G. T.**, A PERSON UNDER THE AGE OF **18**:

CHRISTINA TIETZ,

    PETITIONER-RESPONDENT,

  V.

RYAN TIETZ,

    RESPONDENT-APPELLANT.

---

IN THE INTEREST OF **N. T.**, A PERSON UNDER THE AGE OF **18**:

CHRISTINA TIETZ,

    PETITIONER-RESPONDENT,

  V.

RYAN TIETZ,

    RESPONDENT-APPELLANT.

---

APPEALS from orders of the circuit court for St. Croix County: EDWARD F. VLACK III, Judge. *Reversed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  In these consolidated cases, Ryan Tietz appeals from two child abuse injunctions issued against him, which pertain to two minor children that he shares with his estranged wife, Christina Tietz.[1]  Ryan argues that the circuit court erred by determining there were reasonable grounds to believe that he has engaged in or may engage in abuse of the children.  *See* WIS. STAT. § 813.122(5)(a)3. (2023-24).[2]  Ryan also argues that the court lost competency when it failed to rule on the injunction petitions within 14 days after the issuance of temporary restraining orders.  *See* § 813.122(4)(c).

¶2      We assume without deciding that the circuit court retained competency to issue the child abuse injunctions.  Nevertheless, we conclude the court erred by determining that the requisite reasonable grounds existed to issue the injunctions.  We therefore reverse the injunction orders.

---

[1] For ease of reading and to protect confidentiality, rather than referring to the children involved in this matter using their initials, we refer to them using pseudonyms that do not correspond to the first letters of their names.  Because Ryan and Christina Tietz share a surname, we refer to them by their first names throughout the remainder of this opinion.

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

## BACKGROUND

¶3     Ryan and Christina were married in 2003.  They have four children together.  Christina filed for divorce from Ryan on August 23, 2023.

¶4     The record indicates that the parties had been experiencing marital difficulties for several years before the divorce filing.  From mid-2020 until August 2023, Ryan primarily slept in the basement of the family home.  During that time period, numerous reports were made to child protective services (CPS) regarding the parties' children.  The vast majority of those reports were screened out.  The remaining three proceeded to "Initial Assessments," all of which found allegations of abuse against Ryan to be unsubstantiated.

¶5     In the various CPS reports, multiple professionals expressed concerns about Christina manipulating the children by, for instance, "influencing the [children's] perception of [Ryan] and heightening their responses."  In 2020, Christina told the family's therapist that she would leave Ryan "if she was able to have 100% custody of the children," and the therapist reported "concerns that Christina may have motives to falsely report" abuse allegations against Ryan.  In another report, a sheriff's department investigator opined that "Christina is trying to build a case for divorce, so Ryan won't get the children."

¶6     On August 29, 2023, six days after filing for divorce, Christina recorded a conversation with two of the parties' children, Ann and Beth.  During that conversation, Beth stated she had "seen Dad touch us … [l]ike when he's drunk and he comes into my bed, like, in his underwear."  Beth went on to state that Ryan "touches my private part."  She reported that the touching was over her underwear, but "[o]ne time he might have went under."  After prompting by Christina, Ann stated that Ryan put his hands in her underwear, after which Ann

"slapped him in the face." Ann then stated that Ryan had touched her inside her underwear two times, that he touched her vagina, and that he had also touched her butt. During the conversation, Christina suggested a date for the alleged abuse, stating it had occurred on a night when Ann slept in Beth's room because she was upset that Ryan was drunk and Ann screamed when she saw Ryan in his underwear outside Beth's door.

¶7 Ann's and Beth's sexual assault allegations against Ryan were reported to CPS, which investigated the allegations and found them to be unsubstantiated. During the investigation, Christina alleged that Ryan had sexually assaulted the children on January 7, 2023, a night when Ryan had gotten drunk while watching wrestling with his brother. CPS workers ultimately "found Christina to be inconsistent with information that she provided to law enforcement, along with her interviews," and found that Ann's and Beth's disclosures "lacked consistent information that would indicate that sexual abuse occurred." The St. Croix County Sheriff's Office also investigated the sexual assault allegations, and following completion of the investigation, no criminal charges were filed against Ryan. Sergeant Thomas Williams concluded that Christina's statements during the investigation were "inconsistent and dishonest."

¶8 On September 1, 2023, Christina filed four petitions for child abuse injunctions against Ryan, one related to each of their four children. Temporary restraining orders against Ryan were granted the same day, and a hearing on the injunction petitions was scheduled for September 7. Christina subsequently opted to proceed only with the petitions related to Ann and Beth, and she withdrew the petitions regarding the parties' other two children.

¶9 Between September 7, 2023, and March 13, 2024, the circuit court held 24 hearings on the injunction petitions, some of which were evidentiary and some of which were for scheduling purposes. In addition, on February 12, 2024, the children's guardian ad litem (GAL) submitted her written recommendations to the court.

¶10 With respect to Beth, the GAL opined that there was no evidence of "physical injury" perpetrated by Ryan, as that term is defined in WIS. STAT. § 48.02(14g). With regard to the sexual assault allegations, the GAL concluded that "[t]he evidence presented demonstrated a thorough investigation done by St. Croix County child protection in conjunction with the St. Croix County Sheriff's office that did not result in any findings or decisions stating that the children were unsafe." The GAL also concluded that the evidence did not support a finding of "emotional damage" to Beth, as that term is defined in § 48.02(1)(gm).

¶11 As for Ann, the GAL did not find any evidence of "physical injury" perpetrated by Ryan. Addressing the sexual assault allegations pertaining to Ann, the GAL stated that she was "concerned regarding the large inconsistencies with [Ann's] disclosures." The GAL also noted that "[Ann] has expressed a desire to see [Ryan,] and I have not directly witnessed any apprehension or fear related to her father." Addressing emotional damage, the GAL noted it was undisputed that Ann "is currently struggling with her mental health." The GAL stated, however, that "both parents have cooperated in getting her the recommended treatment" and that "[n]o evidence was presented that showed [Ryan] was refusing to follow any mental health recommendations."

¶12    Ultimately, the GAL concluded there were not "reasonable grounds to grant the petitions for child abuse injunction[s]." In support of that conclusion, the GAL noted:

> The most credible evidence presented was the testimony and corresponding reports by Sergeant Williams. Through the criminal investigation, it was determined that there were credibility concerns related to [Christina] and discrepancies in the disclosures made by the children. Additionally, child protection made the decision that the children are safe with [Ryan]. All of the allegations brought up in the multiple hearings have at one point been reported to child protection. While the burden for these different agencies differ[s], weight should still be given to the professional investigations that have taken place and the determinations related to those investigations.

¶13    The circuit court issued an oral ruling on April 15, 2024, over seven months after the child abuse injunction petitions were filed. The court noted that there had been a "multitude of hearings" on the petitions and that "the presentation of the evidence was very often incredibly confusing." The court then stated it was "clear" "that one of the key incidents was this incident of January 7th, 2023." However, the court stated the "events surrounding January 7th became so muddy" that "it was very difficult to sift out exactly what may have happened or not happened."

¶14    Addressing the issue of emotional damage to Ann, the circuit court cited the testimony of Ann's therapist "that at some point the mental health of [Ann] changed dramatically. And it was at that point in time that her contact with [Ann] went from once a week to twice a week … [a]nd that was due to the mental health issues." The court stated, "It's clear to me that [Ann] has had some, from my opinion, severe issues involving her mental health and emotional health." In contrast, with respect to Beth, the court stated it "really couldn't tell … the extent

6

of the severity" of any mental health issues based on the testimony of Beth's therapist and the other evidence presented.

¶15 The circuit court then continued to address emotional damage by stating:

> I believe that something took place January 7th. Whether or not that has met the burden is difficult for me to say because thing[s] got so muddy. The other thing that's concerning to me is that … the definition of emotional damage is—makes this very limited. And I say that because it's clear to me that when I read the definition of emotional damage, and that is under [WIS. STAT.] § 48.02(5j), and that again, reminder, "Evidence[d] by one [or] more of the following characteristics exhibited to a severe degree: anxiety; depression; withdrawal; outward aggressive behavior; or a substantial and observable change in behavior, emotional response or cognition that is not within the normal range for the child's age and stage of development." It's clear to me that fits exactly what [Ann] is going through.
>
> The difficulty is that when you read [WIS. STAT.] § 48.02(1)(gm), that says[,] "Emotional damage which the child's parent, guardian, or legal custodian has neglected, refused, or been unable or for reasons other than poverty to obtain necessary treatment or to take steps to ameliorate the symptoms."

The court then noted that both children "are seeing [mental health] professionals." The court continued, "The emotional damage situation on that statute makes it difficult to make that finding, other than, … in my opinion I could make the finding that [Ryan] neglected to provide for the treatment with regard to the emotional damage. And, … I'm tempted to make that finding."

¶16 The circuit court then stated, "But also, I could make a finding that there was some physical injury. Again, physical injury, is very, very broad. That may have even taken place on January 7th that resulted in the need for that type of therapy for both children." The court then issued its ruling, stating: "So I'm

making a finding under the physical injury, I'm also making a finding of the emotional damage, … I'm granting the injunctions for a period of 18 months, and that the children should participate in this reunification therapy. And that is my decision."

¶17 The circuit court issued child abuse injunctions with respect to Ann and Beth on April 15, 2024, and subsequently issued amended injunctions regarding both children. Ryan now appeals the injunction orders.[3]

## DISCUSSION

### I. Competency

¶18 Ryan argues that the circuit court lost competency to grant the child abuse injunctions by failing to rule on the injunction petitions within the requisite statutory time period. The relevant statute provides:

> A judge shall hold a hearing on issuance of an injunction within 14 days after the temporary restraining order is issued, unless the time is extended upon the written consent of the parties, extended under [Wis. Stat. §] 801.58(2m), or extended once for 14 days upon a finding that the respondent has not been served with a copy of the temporary restraining order although the petitioner has exercised due diligence.

Wis. Stat. § 813.122(4)(c). "A judge or court commissioner may not extend the temporary restraining order in lieu of ruling on the issuance of an injunction." *Id.*

---

[3] The child abuse injunctions expired on October 15, 2025. These appeals are not moot, however, because the circuit court's electronic docket shows that the divorce action between Christina and Ryan remains pending. This court has recognized that an appeal from an expired child abuse injunction is not moot where there is a pending or anticipated divorce action between the parties because the existence of the injunction may affect the divorce proceedings. *See M.Q. v. Z.Q.*, 152 Wis. 2d 701, 707-08, 449 N.W.2d 75 (Ct. App. 1989).

¶19     Here, it is undisputed that the circuit court did not issue the child abuse injunctions within 14 days after issuance of the temporary restraining orders.  In addition, the appellate records contain no evidence that the parties consented in writing to extend the 14-day time period.  Furthermore, the 14-day time period was not extended under WIS. STAT. § 801.58(2m), pertaining to judicial substitution, nor was any extension granted based upon issues regarding service of the temporary restraining orders.  Rather, the circuit court repeatedly extended the time for completing the injunction hearing based on "good cause to extend" or a finding that "[f]urther time is needed to complete the hearing."

¶20     Ryan contends that, under these circumstances, the circuit court lost competency to rule on the injunction petitions.  We assume, without deciding, that the court retained competency because, as explained below, we reverse the child abuse injunctions on other grounds.  We therefore decline to address the parties' arguments regarding competency.  *See* **Turner v. Taylor**, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (explaining that the court of appeals need not address all issues raised by the parties if one is dispositive).  We emphasize, however, that the best practice would be for a circuit court to decide a petition for a child abuse injunction within 14 days after the issuance of a temporary restraining order, unless one of the grounds for extension set forth in WIS. STAT. § 813.122(4)(c) applies.

## II.  Child abuse injunctions

¶21     The decision whether to grant a child abuse injunction "is left to the discretion of the judge who hears the petition."  **M.Q. v. Z.Q.**, 152 Wis. 2d 701, 708, 449 N.W.2d 75 (Ct. App. 1989).  However, the judge may not grant the injunction unless he or she "finds reasonable grounds to believe that the

9

respondent has engaged in, or based upon prior conduct of the child victim and the respondent may engage in, abuse of the child victim." WIS. STAT. § 813.122(5)(a)3.; *M.Q.*, 152 Wis. 2d at 708. "Whether such reasonable grounds exist is a question of mixed fact and law." *M.Q.*, 152 Wis. 2d at 708. We will not set aside the circuit court's factual findings unless they are clearly erroneous, but "[w]e independently review the judge's conclusion, based on the established facts, whether such reasonable grounds exist." *Id.*

¶22 "For purposes of WIS. STAT. § 813.122, the word 'abuse' has the meaning given in the Children's Code, Chapter 48 of the Wisconsin Statutes." *Kristi L.M. v. Dennis E.M.*, 2007 WI 85, ¶24, 302 Wis. 2d 185, 734 N.W.2d 375 (citing § 813.122(1)(a)). As relevant here, abuse includes: (1) "[p]hysical injury inflicted on a child by other than accidental means"; (2) "sexual intercourse or sexual contact" under WIS. STAT. §§ 940.225, 948.02, 948.025, or 948.085; and (3) "[e]motional damage for which the child's parent, guardian or legal custodian has neglected, refused or been unable for reasons other than poverty to obtain the necessary treatment or to take steps to ameliorate the symptoms." *See* WIS. STAT. § 48.02(1)(a), (b), (gm).

¶23 As an initial matter, we note that in this case, one of the major allegations in the child abuse injunction petitions was that Ryan had sexually assaulted both Ann and Beth. Notably, however, the circuit court did not make a finding that any sexual assaults had occurred. The court stated in its oral ruling that it believed "something took place" on January 7, 2023, the night Ryan allegedly sexually assaulted the children, but the court did not find that sexual intercourse or sexual contact had occurred, for purposes of WIS. STAT. § 48.02(1)(b). We agree with Ryan that the court's "vague statement" that

"something" happened on January 7 "is not a finding of abuse as it is defined in the statute" and "cannot support the issuance of the child abuse injunction[s]."

¶24    Rather than finding that any sexual assaults had occurred, the circuit court stated that it was "making a finding under the physical injury" and "making a finding of the emotional damage." *See* WIS. STAT. § 48.02(1)(a), (gm).  Again, however, we agree with Ryan that the court's analysis of both of these issues was flawed.

¶25    The circuit court stated that physical injury is "very, very broad" and "may have even taken place on January 7th."  In making that finding, however, the court did not apply the definition of "physical injury" in WIS. STAT. § 48.02(14g), which states that physical injury "includes but is not limited to lacerations, fractured bones, burns, internal injuries, severe or frequent bruising or great bodily harm."  Great bodily harm, in turn, "means bodily injury which creates a substantial risk of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily injury." WIS. STAT. § 939.22(14).

¶26    The circuit court did not explain what type of physical injury it believed may have taken place on January 7, 2023.  The court did not make any finding that any type of injury akin to the injuries listed in WIS. STAT. § 48.02(14g) occurred on that date.[4]  Christina did not argue in the circuit court

---

[4] While WIS. STAT. § 48.02(14g) states that physical injury "includes but is not limited to" the specific injuries listed in the statute, "[u]nder the rule of *ejusdem generis*, where a general term is preceded or followed by a series of specific terms, the general term is viewed as being limited to an item of the same type or nature as those specifically enumerated." *Hatheway v. Gannett Satellite Info. Network, Inc.*, 157 Wis. 2d 395, 400, 459 N.W.2d 873 (Ct. App. 1990).

11

that any physical injury, as that term is defined in § 48.02(14g), had occurred on January 7. Instead, Christina alleged that inappropriate sexual touching of the children took place on that date. We agree with Ryan, however, that "touching without injury does not meet the definition of 'physical injury' under the statute." On this record, the court's finding that physical injury occurred on January 7 was clearly erroneous.[5]

¶27 The circuit court's findings regarding emotional damage were also clearly erroneous. "Emotional damage" means "harm to a child's psychological or intellectual functioning" and "shall be evidenced by one or more of the following characteristics exhibited to a severe degree: anxiety; depression; withdrawal; outward aggressive behavior; or a substantial and observable change in behavior, emotional response or cognition that is not within the normal range for the child's age and stage of development." WIS. STAT. § 48.02(5j).

¶28 The circuit court did not make any finding that Beth had suffered emotional damage, as that term is defined in WIS. STAT. § 48.02(5j). After quoting the statutory definition of emotional damage, the court stated, "It's clear to me that fits exactly what [*Ann*] is going through." (Emphasis added.) However, the court made no similar finding regarding Beth. To the contrary, the court stated with respect to Beth that it "really couldn't tell … the extent of the severity" of any mental health issues. Without a finding as to the severity of Beth's symptoms, the court could not have found that Beth suffered emotional damage, as that term is defined in § 48.02(5j). *See id.* (stating that emotional damage must be

---

[5] Although evidence was presented regarding alleged incidents of physical abuse on other dates, the circuit court mentioned only January 7 in its oral ruling and did not make a finding that Ryan had caused physical injury to the children at any other time.

evidenced by certain characteristics "exhibited to a severe degree"); *see also* ***M.Q.***, 152 Wis. 2d at 709 (explaining that evidence that a child was "upset" or "concerned" "does not, in the absence of expert testimony, equal severe anxiety or depression").

¶29 Unlike Beth, the circuit court did make a finding that Ann's symptoms met the statutory definition of emotional damage. In so doing, however, the court improperly considered evidence regarding Ann's mental health *after* the injunction petitions were filed. Citing the testimony of Ann's therapist, the court stated that "at some point the mental health of [Ann] changed dramatically. And it was at that point in time that [the therapist's] contact with [Ann] went from once a week to twice a week … [a]nd that was due to the mental health issues." Ann's therapist testified that the increase in Ann's therapy sessions occurred during the week of September 26, 2023, which was approximately three weeks after the injunction petitions were filed. "[F]or the purpose of determining whether grounds exist to issue a child abuse injunction pursuant to WIS. STAT. § 813.122, a trial court may consider only pre-petition evidence." ***S.O. v. T.R.***, 2016 WI App 24, ¶39, 367 Wis. 2d 669, 877 N.W.2d 408. Thus, to the extent the circuit court's finding of emotional damage to Ann was based on changes in Ann's treatment needs that occurred after the injunction petitions were filed, that finding was clearly erroneous.

¶30 Moreover, emotional damage alone does not qualify as abuse under WIS. STAT. § 48.02(1). Instead, as noted above, the statutory definition of abuse includes "[e]motional damage *for which the child's parent, guardian or legal custodian has neglected, refused or been unable for reasons other than poverty to obtain the necessary treatment or to take steps to ameliorate the symptoms.*" Sec. 48.02(1)(gm) (emphasis added).

13

¶31    The circuit court stated it was "tempted to make" a finding that Ryan "neglected to provide for the treatment with regard to the emotional damage." The court did not, however, explain the basis for any such finding, and the record does not support it. Instead, the evidence showed that Ann had been in therapy since October 2022, eleven months before the injunction petitions were filed. While the circuit court opined that, in the future, both children would "have to have some type of contact with a professional in order to work into having contact with" Ryan again, the court cited no evidence of any mental health treatment that Ryan had neglected or refused to provide prior to the filing of the injunction petitions. Notably, in her posthearing brief, Christina argued that both Ann and Beth had suffered emotional damage, but she did not argue that Ryan had at any point neglected or refused to provide necessary treatment for their symptoms. On this record, we agree with Ryan that the circuit court's finding of emotional damage with respect to Ann was clearly erroneous.[6]

¶32    On appeal, Christina emphasizes that in order to grant a petition for a child abuse injunction, a circuit court must find "reasonable grounds to believe that the respondent has engaged in, *or based upon prior conduct of the child victim and the respondent may engage in*, abuse of the child victim." *See* WIS. STAT. § 813.122(5)(a)3. (emphasis added). Christina argues that, at a minimum, the evidence was sufficient for the court to find reasonable grounds to believe that

---

[6] As noted above, the circuit court did not make an express finding of emotional damage with respect to Beth. On appeal, Christina argues that the court "implicitly found [Beth] was 'emotionally damaged' by virtue of her treatment needs." The court's oral ruling does not support this assertion. Regardless, even if the court implicitly found that Beth had suffered emotional damage, as that term is defined in WIS. STAT. § 48.02(5j), the court cited no evidence that Ryan had neglected or refused to provide necessary treatment for Beth's symptoms. *See* § 48.02(1)(gm). To the contrary, the record shows that Beth had been in therapy since March 2020, over three years before the injunction petitions were filed.

Ryan may cause physical injury and emotional damage to Ann and Beth in the future.

¶33    As Ryan correctly notes, however, a "[s]peculative belief" that an individual may engage in abuse of a child in the future is insufficient to support the issuance of a child abuse injunction.  Instead, there must be reasonable grounds to believe that future abuse may occur "based upon prior conduct of the child victim and the respondent."  *See id.*  Christina does not provide a developed argument as to what specific prior conduct would have supported a finding, in this case, of reasonable grounds to believe that future abuse of the children may occur. Moreover, we note that the circuit court did not expressly refer to potential future abuse in its oral ruling, and it does not appear that the court relied on the prospect of future abuse in making its decision.

¶34    In short, we conclude that the circuit court's findings regarding physical injury to Ann and Beth and emotional damage to Ann are clearly erroneous.  As such, the court erred by concluding that the requisite reasonable grounds existed to issue the child abuse injunctions, and we therefore reverse the injunction orders.

¶35    Christina argues that rather than reversing the injunction orders outright, we should remand this matter to the circuit court for additional factual findings, while retaining jurisdiction.  Christina contends that the circuit court "should be given the opportunity to clarify its legal and factual findings while maintaining the injunction[s]."

¶36    Christina is correct that when a circuit court fails to make adequate factual findings, this court may "remand for further findings and conclusions." *See **Minguey v. Brookens***, 100 Wis. 2d 681, 688, 303 N.W.2d 581 (1981).  Under

15

the specific circumstances of this case, however, we decline to exercise that option.  The injunction petitions against Ryan were filed on September 1, 2023, and temporary restraining orders were issued the same day.  Although the injunction hearing should have been held within 14 days after the temporary restraining orders were issued, *see* WIS. STAT. § 813.122(4)(c), the evidentiary portion of the hearing was not completed until January 2024, and the circuit court did not issue its oral ruling until April 15, 2024.  Additional delays occurred while Ryan's appeals of the injunction orders were pending, and the orders have now expired.  We agree with Ryan that, under these circumstances, the appropriate course is to reverse the injunction orders, rather than remanding for additional factfinding by the circuit court.

>*By the Court.*—Orders reversed.

>This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.